## McCulloch v. The State.

CRIMINAL LAW.—*Murder.*—*Circumstantial Evidence.*—*Corpus Delicti.*—On a trial for murder, evidence was given of the finding of the skeleton of a human being of the sex of the person charged to have been murdered, and corresponding to his size.

*Held,* that this was sufficient evidence of the *corpus delicti* to justify the admission of circumstantial evidence to identify the skeleton as that of the murdered party, as well as to show the cause and manner of his death.

SAME.— *Voluntary Confession.*—A witness for the State in a trial for murder testified to several conversations with the accused, in some of which the latter spoke of having killed a man by the name of Morgan, which was the name of the person alleged in the indictment to have been murdered, and in one conversation the prisoner stated that he was innocent of crime, but it did not affirmatively appear that the declaration of innocence was made in the same conversation in which he confessed the homicide.

*Held,* that it could not be rightfully assumed by the Supreme Court that the assertion of innocence was necessarily made by the accused in the same conversation in which he said he had killed a man by the name of Morgan.

From the Benton Circuit Court.

*R. C. Gregory, W. B. Gregory,* and *R. P. DeHart,* for appellant.

*J. C. Denny,* Attorney General, *C. A. Buskirk,* Attorney General, and *S. P. Thompson,* Prosecuting Attorney, for the State.

WORDEN, J.—The appellant was indicted in the court below for the murder of William C. Morgan, and, upon trial, was convicted and sentenced to imprisonment for life in the state prison. His counsel have filed an able and elaborate brief, insisting that the verdict was not sustained by the evidence,

and that the court erred in its charges to the jury. We have read the evidence with care, and, although it is mostly circumstantial in its character, we are satisfied that it established the guilt of the appellant beyond any reasonable doubt.

On the 5th of May, 1865, the deceased started from Wisconsin, with a pair of horses and a covered wagon, to come to Indiana. Some one got into the wagon with him, not shown to have been the appellant; but it was shown that the deceased and the appellant had previously made an arrangement to come together. This was the last that was ever seen or heard of Morgan by his friends or relatives.

In the autumn of 1867, a human skeleton, not quite entire, of the male sex and Caucasian race, and corresponding very well in point of size with Morgan, was found in a slough or pond, not far from a highway, in Benton county, Indiana. The skull had a hole on the lower posterior part, and a cut or gash on the top, apparently made with some sharp instrument. The latter could not have been self inflicted, and was sufficient to cause death.

A chain of circumstances, proved on the trial, led to the conclusion, beyond any reasonable doubt, that the skeleton was that of William C. Morgan, and that the appellant was guilty of his murder.

The circumstances are too numerous to be detailed in this opinion, and no good purpose would be subserved by setting them out. We are entirely satisfied with the conclusion arrived at by the jury upon the evidence.

The following are the charges excepted to by the defendant:

" 6. To warrant a conviction in this case, you must first be satisfied beyond a reasonable doubt that the skeleton offered in evidence is the remains of a human being. When this fact is proved, then the State may prove by circumstantial evidence that said remains are those of William C. Morgan, the man alleged to have been killed, and may also prove by the same kind of evidence that the defendant killed him. But to warrant a conviction on circumstantial evidence, it should be so

strong as to exclude every reasonable hypothesis of innocence.

"7. Confessions alleged to have been made by the defendant are to be received with great caution, and are entitled to no consideration until the jury are satisfied, from the evidence, beyond a reasonable doubt, that said Morgan was murdered. If the jury find that the fact of Morgan's murder is established, beyond a reasonable doubt, by evidence independent of the defendant's confession, and that after his death the defendant voluntarily, and without any inducement, confessed himself guilty of the crime, such confession, if the jury find beyond a reasonable doubt that it was made, may be considered by them as strong proof of guilt."

The counsel for the appellant insist that the sixth charge is wrong, inasmuch as by it the jury were told that if they believed that the skeleton offered in evidence was the remains of a human being, the State might prove by circumstantial evidence that it was the remains of William C. Morgan. They insist that as this was, in substance, a charge that the *corpus delicti* might be proved by circumstantial evidence, the charge was clearly wrong. They cite, in support of the position taken, the case of *Ruloff* v. *The People,* 18 N. Y. 179.

It may be conceded, that much that is said in that case militates against the charge in question. But that case differs from this. In that case, the defendant was charged with the murder of a child. There was no direct proof that the child was dead or had been murdered, or that her dead body had ever been found or seen by any one. The jury were asked to presume and find from the lapse of time since the child and her mother were last seen, and from other facts and circumstances, that the child was dead, and had been murdered by the prisoner. The court held, that there must be direct proof of the *corpus delicti.*

Whether the court would have applied the doctrine to a case like the present, is rendered quite doubtful by the closing paragraph of the opinion in the cause. "If," say the court, "what is said by these writers is to be taken as intimating

their opinion that Lord HALE's rule may be departed from, I find no judicial authority warranting the departure. The rule is not founded in a denial of the force of circumstantial evidence, but in the danger of allowing any but unequivocal and certain proof that some one is dead to be the ground on which, by the interpretation of circumstances of suspicion, an accused person is to be convicted of murder."

In the case in judgment, the skeleton supplied what it would seem the court, in the New York case, thought to be lacking in order to a conviction on evidence otherwise circumstantial.

In the case of *The State* v. *Williams,* 7 Jones N. C. 446, it was held, that in a case where the supposed body of the person alleged to have been murdered had been destroyed by fire, leaving remains shown to have been human, the *corpus delicti* might be proved by circumstantial evidence. So, in the case of *Stocking* v. *The State,* 7 Ind. 326, where the body was destroyed by fire, this court said: "The *corpus delicti* may, like any other part of the case, be proved by circumstantial evidence."

We shall not enter upon an extended examination of the authorities upon this question, but content ourselves with the citation of a few passages from elementary writers:

" The *corpus delicti,* or the fact that a murder has been committed, is so essential to be satisfactorily proved, that Lord HALE advises that no person be convicted of culpable homicide, unless the fact were proved to have been done, or at least the body found dead. Without this proof a conviction would not be warranted, though there were evidence of conduct of the prisoner exhibiting satisfactory indications of guilt. But the fact, as we have already seen, need not be directly proved; it being sufficient if it be established by circumstances so strong and intense as to produce the full assurance of moral certainty." 3 Greenl. Ev., sec. 131.

Bishop says, 1 Bish. Crim. Proced., sec. 1070, speaking of the doctrine of Lord HALE: " But this doctrine is rather one of caution and sound judgment than of absolute law, according

to what appears to be the better and later English authority." Again, the same author, in the next following section, says: "If we look at the matter as one of legal principle, we can hardly fail to be convinced, that, while the *corpus delicti* is a part of the case which should always receive careful attention, and no man should be convicted until it is in some way made clear that a crime has been committed, yet there can be no one kind of evidence to be always demanded in proof of this fact any more than of any other. If the defendant should not be convicted when there has been no crime, so equally should he not be when he has not committed the crime, though somebody has; the one proposition is as important to be maintained as the other; yet neither should be put forward to exclude evidence which in reason ought to be convincing to the understanding of the jury."

We quote another paragraph from 3 Greenl. Ev., sec. 133 : "But though it is necessary that the body of the deceased be satisfactorily identified, it is not necessary that this be proved by direct and positive evidence. Where only mutilated remains have been found, it ought to be clearly and satisfactorily shown that they are the remains of a human being, and of one answering to the sex, age, and description of the deceased; and the agency of the prisoner in their mutilation, or in producing the appearances found upon them, should be established. Identification may also be facilitated by circumstances apparent in and about the remains, such as the apparel, articles found on the person, and the contents of the stomach, connected with proof of the habits of the deceased in respect to his food, or with the circumstances immediately preceding his dissolution."

Whatever may be the law in respect to cases where no supposed remains of the person charged to have been murdered have been found, as was the case in *Ruloff* v. *The People, supra*, we are of opinion that the charge given, as applied to the case made by the evidence, was not erroneous. Circumstantial evidence, as we think, was clearly competent to iden-

tify the skeleton produced as the remains of William C. Morgan, as well as to show the cause and manner of his death.

We pass to the seventh instruction. We do not understand that counsel for the appellant question the correctness of this instruction as an abstract proposition; but they insist that there was no evidence given to which such charge could be applied, and therefore that it was erroneous. They claim that the appellant made no deliberate confessions of guilt, and that the charge was calculated to do him harm, by impressing the jury with the idea that what he did say amounted to such confession.

The evidence in respect to the confessions of the appellant, as it appears in the bill of exceptions, is as follows:

"Henry C. Warrell, a witness for the State, being duly sworn, testified as follows: I am acquainted with the defendant; we roomed together in the Illinois state's prison; I knew him in prison as James McCulloch; I saw him frequently for some three years; I saw him in the spring of 1872; my memory is very poor; I am a prisoner myself; there was considerable talk in the prison about his case and mine; I was in for burglary; I heard him make remarks about being uneasy about being arrested when his time was up; I will give you the substance of it, as well as I can now remember: he told me he expected to be arrested on a charge of murder; he said he had killed a man by the name of Morgan, and he was afraid the deceased man's father would arrest him when his time expired; that the only proof that would be against him was that he was seen in company with the man, and was caught in possession of his team; I do not know that there was much more said at that time, I did not believe it, and did not pay much attention to it; I heard him make little remarks about his being uneasy about being arrested when he got out; there was a convict in prison at that time by the name of Col. Cross, a kind of a lawyer; I cannot explain every word; he went to him for information; he said they had found the skeleton that was said to be the man he murdered; he wanted to know if it would be any evidence against him, if it could not be identi-

McCulloch v. The State.

.fied; I think Col. Cross said it would be no evidence against him; and that is all the conversation I heard, except his expression about being uneasy; he got some letters from his wife; he said there was nothing said lately about the Morgan case.

"On cross-examination, the witness testified as follows: I am a convict, and have been convicted on three different indictments for burglary; sentenced ten years; have served five years and four months of the time; I was brought here in chains; I left them off outside; the defendant told me in this same conversation, and at other times, that he wanted them to take him out and try him then, and not bother him when his time was out; in this same conversation I spoke of a while ago, he said he was an innocent man; that he was innocent of the charge; my memory is very poor; he always said he wanted to be tried then for the charge, and not be bothered when he got out; he never said he wanted to get out and be tried after the skeleton was found."

The evidence, as it comes up to us, is a little obscure, in this, that it does not very distinctly appear to what conversation the witness alluded as the one he spoke of "a while ago," in which the defendant said he was an innocent man, etc. The witness had spoken of several conversations. In one of these the defendant, according to the witness, said he had killed a man by the name of Morgan, etc. Then the defendant had a conversation with Col. Cross, and took his advice. Then he said at other times that he wanted them to take him out and try him, etc.

It does not appear in which of these conversations it was that he said he was innocent. It cannot be rightfully assumed that it was necessarily in the one in which he said he had killed a man by the name of Morgan.

With this evidence before the jury, we think the court was clearly justified in giving the charge in question.

There is no error in the record, and the judgment below must be affirmed.

The judgment below is affirmed, with costs.