# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT

OF THE

## STATE OF NEVADA.

## APRIL· TERM, 1886.

19  319
25  470

[No. 1231.]

## THE STATE OF NEVADA, Respondeñt, *v.* JOHN CARDELLI, Appellant.

Criminal Law—Corpus Delicti—Evidence—Direct or Circumstantial.
—A person charged with a criminal offense is not called upon to answer the charge without satisfactory proof, upon the part of the prosecution, of the *corpus delicti;* yet it is not essential, *in all cases,* that there should be any direct evidence upon this point. The *corpus delicti* may be established by circumstantial evidence.

Idem—Larceny of Cattle—Brands and Marks—Identification—Proof of Ownership.—The identification and ownership of cattle may be proved by the brands and marks on the hides therefrom. Whether the evidence upon this point, in any given case, is sufficient as to the ownership of the cattle, is a question of fact to be determined by the jury.

Idem—Sufficiency of Evidence.—*Held,* that the evidence in this case was sufficient to authorize the jury to consider and pass upon the question of ownership of the cattle stolen by defendant.

IDEM—PRESUMPTIONS FROM ESTABLISHED FACTS.—There must be some evidence to raise a presumption; but when one thing is established beyond a reasonable doubt, which to the same extent convinces the understanding that another must have happened, it is legitimate to presume it did happen.

BRANDS AND MARKS—STATUTE CONSTRUED.—The "act to regulate marks and brands of stock" (Gen. Stat. 757–767), which provides that "no mark, brand, or counter-brand shall be considered as lawful if not recorded as specified in this act," has no application to the use of such mark or brand in the identification of cattle as evidence in a criminal prosecution for larceny.

LARCENY—DEMAND OF PAYMENT FOR STOLEN GOODS.—Neither the guilt nor innocence of the defendant, the ownership of the cattle, or credibility of the witnesses, depended in any manner upon the question whether the owners of the cattle stolen had demanded payment, or possession of the cattle, from the persons who had innocently purchased and paid for them from the defendant.

INSTRUCTIONS—NEED NOT BE REPEATED.—The ruling of the court, in refusing certain instructions, is sustained, upon the ground that the points embodied therein had been clearly given in other instructions.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*W. E. F. Deal,* for Appellant:

I. The court erred in instructing the jury that what was said in relation to the brands and marks of Vail Bros., not being recorded, was immaterial in this case. Until the act of 1885 was passed, the evidence in this case to show that Vail Bros. were the owners of these cattle was not even *prima facie* evidence of ownership, much less proof beyond any reasonable doubt, as was necessary to authorize defendant's conviction. (Comp. L. 3990; Stat. 1885, 44; *Hutto* v. *State,* 7 Tex. App. 44; *Fisher* v. *State,* 4 Tex. App. 181; *Wolf* v. *State,* 4 Tex. App. 332; *Poage* v. *State,* 43 Tex. 454; *Herber* v. *State,* 7 Tex. 69.)

II. The court erred in instructing the jury that the fact that Vail Bros. had not demanded of Mr. Hancock the cattle sold by defendant to him, and that they had not demanded of Zeigler Bros. payment for the cattle described in the indictment did not affect the case at all. The instruction was a clear violation of section 12, article 6, of the constitution of the state. The court told the jury what weight they should give the testimony. (*Battersby* v. *Abbott,* 9 Cal. 565; *People* v. *Ybarra,* 17 Cal. 166; *State* v. *Millain,* 3 Nev. 447; *Buckley* v. *Buckley,* 9 Nev. 373.)

III.   There was no proof of the *corpus delicti*. It is essential in order to convict in a case of larceny that proof be made beyond a reasonable doubt; that something has been stolen.   There is no proof in this case that Vail Bros. lost any cattle of the J. C. brand, or that any was stolen from them. (3 Green. Ev., sec. 161; *May* v. *People*, 92 Ill. 343; *State* v. *McGowan*, 1 S. C. 14; *Burton* v. *Marsh*, 6 Jones (N. C.) 409; Bish. Cr. Pro., sec. 1071, and note; *People* v. *Williams*, 57 Cal. 108; *Robinson* v. *State*, 5 Tex. App. 519; *People* v. *Carabin*, 14 Cal. 438; *Reg.* v. *Dredge*, 1 Cox C. C. 235; 2 Hale P. C. 290; Stark. Ev. 758; 1 Best Ev., sec. 441; *Tyner* v. *State*, 5 Humph. 383; *Phillips* v. *State*, 29 Ga. 108; *State* v. *Davidson*, 30 Vt. 385;[1] *State* v. *Moon*, 41 Wis. 684; *People* v. *Gordon*, 40 Mich. 720.)

*W. H. Davenport*, Attorney General, and *J. A. Stephens*, District Attorney of Storey County, for Respondent:

I.   The court did not err in any of its rulings upon the instructions given and refused.

II.   There was ample proof of the *corpus delicti*.   In addition to the direct testimony as to marks and brands, there was a vast amount of circumstantial evidence from which ownership in the Vail Bros. might be inferred.   The *corpus delicti*, as well as any other fact, may be established by circumstantial evidence.   (3 Greenl. Ev., sec. 30; *State* v. *Watkins*, 11 Nev. 36; *State* v. *Loveless*, 17 Id. 427; *Williams* v. *State*, 60 Ala. 401.) There was, at least, some testimony that the Vail Bros. owned the cattle; the sufficiency of this testimony was a question solely for the jury, and we submit that under the law the judgment should be affirmed.   (1 Comp. L. 2000; *State* v. *McGinnis*, 6 Nev. 109; *State* v. *Crozier*, 12 Id. 304; *State* v. *Ah Chew*, 14 Id. 79.[2])

By the Court, HAWLEY, J.:

Appellant was convicted of the crime of grand larceny for feloniously taking "three steers and two young cows (commonly called heifers), all of which cattle were branded with the letters J. C. on the left hip, and marked with crop and split in the left ear, * * * the property of Hugh Vail and John R. Vail, partners, doing business under the firm name of Vail

---

1   73 Am. Dec. 312.                    2   40 Am. Rep. 488.

Bros." He claims that the evidence upon which he was convicted is insufficient in law to sustain the verdict in this: that there is no direct testimony or other competent proof of the *corpus delicti.* The contention urged relates exclusively to the testimony submitted on the part of the prosecution as to the ownership of the cattle.

On the twenty-second of June, 1884, the Vail Bros. purchased of John Carlin the Carlin ranch consisting of four thousand five hundred acres of inclosed land, with a cattle range on the public.lands of "twenty-five miles each way," and a band of cattle, "everything that Carlin owned." The cattle were at that time grazing on the range, and were not counted until several months after the purchase. The greater portion (over one thousand head) of these cattle were branded and marked as specified in the indictment. The range over which these cattle roamed extends to the Cardelli ranch, and the Cooney ranch, owned by the Cardelli Bros., and some of the cattle were often seen in that vicinity. In the latter part of January, 1885, appellant called at the butcher-shop of Zeigler Bros. in Virginia City, and inquired if they wished to buy any cattle. John Zeigler said he would look at the cattle first. A few days thereafter he went to the Cardelli ranch, and from thence, in company with appellant, to the Cooney ranch, where five head of cattle were found in a barn. Appellant said he kept them in the barn because "he was afraid of them breaking the fence." These five head of cattle, three steers and two heifers, were purchased by Zeigler Bros., and delivered to them by appellant at their slaughter-house, on American Flat, on the fifth of February. Either before or after the sale, appellant stated to Zeigler Bros. that he did not want his brother (Orlando) to know that he was selling any cattle. A few weeks after the cattle were slaughtered he said to Charles Zeigler that he wanted a sack " to go out to the slaughter-house and cut the brands out of the hides."

March 1, Vail Bros. caused a notice to be published in the *Daily Territorial Enterprise,* at Virginia City, offering a reward for the arrest and conviction of any person guilty of stealing any of their cattle. About the fifteenth of March, Hugh Vail, having received information about the sale of the cattle, went to Virginia City, examined the hides taken from the five head of cattle, and identified them as " hides of the cattle " which Vail

Bros. bought from Carlin. He testified positively, as did several other witnesses, that the cattle from which the hides were taken belonged to Vail Bros. He frankly acknowledged, however, that he had no means of identifying them "except by the brands and ear-marks." There was no other direct proof as to the loss of these cattle by Vail Bros. There was testimony to the effect that men engaged in the cattle business could always identify their cattle "by brands and marks"; that "it is an easy matter to distinguish the Carlin cattle from any other cattle in that range"; that there is no difficulty in distinguishing the Carlin cattle from the Cardelli cattle by the brands and ear-marks; that the brand of the Cardelli Bros. was O. C.; that the experience of men who have for many years been engaged in this business is, that brands of the same letters, owned by different persons, are not "exactly alike"; that the five hides examined by the witnesses belonged to cattle formerly owned by John Carlin; that Carlin "always vented his cattle when sold," except when sold to be slaughtered; that the branding-iron in the possession of Cardelli Bros. with the letters J. C. was different from Carlin's brand; that the Carlin brand is a "plain J. C., without any indentation in the iron"; that the Cardelli brand has an indentation stroke on the top; that one "has the letters joined together," and the other "the letters are separate"; that "it is easy to distinguish one brand from the other"; that appellant, in December, 1884, sold four steers to William Hancock; that one of these was butchered, and the other three were alive at the time of the trial; that the living steers were, by John R. Vail and others, recognized and identified by the brands and marks as the cattle of Vail Bros.; that the age of the cattle purchased by Zeigler Bros. was, of the heifers, about two years, and of the steers about three years. This is substantially the testimony upon the part of the prosecution.

The testimony upon the part of the defense tended to show that in 1881 the Cardelli Bros. had a brand made with the letters J. C.; that in June of that year appellant and his brother, Fancredi, branded eleven calves (steers) and one heifer, and turned them out to roam at large upon the public lands; that these cattle had been seen at different times; that appellant, in the fall of 1884, made public search and inquiry for these cattle; and his defense was, that the cattle sold to Zeigler and Han-

cock were the same cattle as branded by him and his brother in 1881; and that they were the true owners, or, at least, that appellant acted in good faith believing them to be the cattle of Cardelli Bros. The testimony upon the part of the defense was in conflict with the testimony of the prosecution as to the venting of the cattle, when sold, by Carlin, the character and identity of brands and marks, and in other particulars.

1. Is this testimony sufficient to establish the *corpus delicti?* Every criminal charge necessarily involves two distinct propositions: (1) that a criminal act has been committed; (2) that the guilt of such act attaches to the particular person charged with the commission of the offense. In cases of larceny, it is of course essential for the prosecution to prove that the property was feloniously taken from the person named in the indictment as the owner. "It must appear that the goods were stolen from the prosecutor; and if he, being a witness, cannot swear to the loss of the articles alleged to have been stolen from him, the prisoner must be acquitted." (3 Greenl. Ev., sec. 161.)

In what manner may this proof be made? Must it always be direct and positive? Is it absolutely essential in all cases that the proof of the *corpus delicti* should be first established independent of the other elements of the offense? While it is true that a person charged with the commission of a criminal offense is not called upon to answer the charge without satisfactory proof, upon the part of the prosecution, of the *corpus delicti*, yet it is not essential, *in all cases*, that there should be any direct evidence upon this point.

In addition to Greenleaf on Evidence, above quoted, appellant cites several authorities where, under the particular state of the testimony, it has been held that circumstantial evidence of the offense could not be accepted " as satisfactory in law, unless, besides this, there is direct evidence of the *corpus delicti*." Many of the cases are referred to in a note to section 1071, 1 Bish. Crim. Prac. Some of them are cases like *People* v. *Williams*, 57 Cal. 108, where no evidence of any kind was offered upon that point. Bishop, after citing the cases relied upon by appellant, concludes the section by saying: " If we look at the matter as one of legal principle, we can hardly fail to be convinced that while the *corpus delicti* is a part of the case which should always receive careful attention, and no man should be convicted until it is in some way made clear that a crime has

been committed, yet there can be no one kind of evidence to be always demanded in proof of this fact any more than of any other. If the defendant should not be convicted when there has been no crime, so equally should he not be when he has not committed the crime, though somebody has; the one proposition is as important to be maintained as the other, yet neither should be put forward to exclude evidence which in reason ought to be convincing to the understanding of the jury."

In *State* v. *Keeler*, the court said: " Now, the rule should be adhered to with the utmost and strictest tenacity that the facts forming the basis of the offense, or *corpus delicti*, must be proved either by direct testimony, or by presumptive evidence of the most cogent or irresistible kind. In one of these methods the essential fact or facts must be established beyond a reasonable doubt. But if thus established, or if the jury can be and are satisfied of such facts beyond this reasonable doubt, it matters not whether they are conducted to this result by direct or presumptive evidence. In other words, while the proof should be clear and distinct, it is not necessary that it should be direct and positive; for while that which is direct might be more satisfactory, less liable to deceive and mislead, this goes to its weight or effect, and by no means establishes that in no other way can the essential facts be shown with the requisite distinctness and clearness." (28 Iowa, 553.)

The fact that the *corpus delicti* may be established by circumstantial evidence is well settled. (3 Greenl. Ev., secs. 30, 31; Burrill, Cr. Ev. 680, 734; Wills, Cr. Ev. 201; *Reg.* v. *Burton*, Dears. Cr. Cas. 282; *Rex* v. *Burdett*, 4 Barn. & Ald. 122; *McCullough* v. *State*, 48 Ind. 112; *Brown* v. *State*, 1 Tex. App. 155; *Roberts* v. *State*, 61 Ala. 401; *State* v. *Ah Chuey*, 14 Nev. 92;[1] *State* v. *Loveless*, 17 Nev. 427, and autho ities there cited.) In several of these cases convictions were sustained upon testimony of the *corpus delicti* which was not any stronger, or more satisfactory, than the testimony given in this case.

The general principles announced by Sir William Scott, in *Evans* v. *Evans*, 1 Hagg. 105, that " if you have a criminal fact ascertained, you may then take presumptive proof to show who did it "; and Lord Hale's remarks, in 2 Hale P. C. 200, that he would " never convict any person for the stealing of goods *cujusdam ignoti*, merely because he would not give an account of how he came by them, unless there was due proof made that

[1]  33 Am. Rep. 536.

a felony was committed of these goods," might be correct in all cases where the proof of the crime is separable from the proofs which furnish a clew to the perpetrator of the crime; "but the general principle which they lay down must be taken with considerable limitation, and in order to treat the subject with accuracy, it is to be remarked that in some offenses the evidence establishing the existence of the crime also indicates the criminal, while in others the traces or effects of the crime are visible, leaving the author of it undetermined." (Best, Pres., sec. 201.)

Applying the principles of law above announced to the facts of this case, can the position contended for by appellant's counsel be maintained? Was there no evidence for the jury to consider and pass upon? It is true that there was no direct or positive evidence as to the loss of the cattle by Vail Bros. independent of the fact of their identification by the brands and marks found on the hides; but we have shown that this was not essential. Was there any testimony as to the loss of these cattle?

The owners of a few head of stock, kept within an inclosure, would be likely to know when any were missing, and might be able to positively swear to the loss of their cattle; while stock-owners, with large herds of cattle roaming over extensive ranges, might not be able to swear positively how many, if any, were lost, until all were gathered into a corral and counted. Some die, others stray away, and, as a general rule, the fact that any are stolen can only be established, if the thief is not caught in the act of driving them away, by testimony of similar character to that offered in this case.

It would be difficult, if not impossible, in many cases, to establish the identity, ownership, and loss of cattle in a more direct or satisfactory manner than appears from the testimony in the record of this case. If the hides had not been preserved and identified, the Vail Bros. could not have testified to the loss of these particular cattle; but with this proof of identity, taken in connection with the other facts, is it not made clear to the ordinary mind that proof was offered of the loss of the five head of cattle? It is true that neither juries nor courts should presume a fact without proof. There must be some evidence to raise a presumption; but when one thing is established, beyond a reasonable doubt, which, to the same extent, convinces the

understanding that another must have happened, have we no right to presume it did happen? With the identification of the hides having the brands and marks of Carlin, does it not follow, if neither Carlin nor Vail Bros. had sold or otherwise disposed of them to other parties, and no one else had used the same brand and marks, that these identical cattle must have been taken from the possession of Vail Bros.? Was there not ample testimony of the *corpus delicti?*

The testimony which tended to show that these cattle did not belong to Cardelli or his brothers was, in our opinion, calculated to strengthen the evidence tending to show that they belonged to the Vail Bros. Appellant claimed to have raised these particular cattle, and to have branded them with the letters J. C. in June, 1881, when they were calves. Was this testimony true? Was not this a question of fact for the jury to decide? Was it not the duty of the jury in determining this question to consider the testimony as to the age of the cattle, as to the difference of the branding-irons used by the respective parties, in connection with other facts? If the jury disbelieved the testimony of the defense upon these points, would it not legitimately tend to strengthen the evidence of identity and ownership of these cattle by Vail Bros. offered upon the part of the prosecution? Many of the criminative circumstances tending to prove that the cattle were stolen by appellant necessarily tended to show that they were the property of Vail Bros. It was the duty of the jury to consider such circumstances, in connection with the fact that the hides were identified by the marks and brands as having been taken from cattle owned by Vail Bros.

If Vail Bros. had counted their cattle a week before any were stolen, and found just one thousand head branded J. C., and a week thereafter had again gathered them in and found but nine hundred and ninety-five, they could have sworn positively that five head were missing at the time of the second count; but they could not have sworn whether they had died, strayed away, or been stolen, unless the bodies, or hides taken therefrom, had been found and identified. There are many ways of identifying stock. A milch cow, pet calf, work oxen, or cattle of some particular breed, might be readily recognized and identified by their color or general appearance; but large herds of ordinary cattle could not, as a general rule, be identified in such manner,

and in cases of this kind, the proof would certainly be as satisfactory if the cattle were identified by the brands and marks. The object in branding and marking cattle, as was well stated by the district court in its instructions, "is for the purpose of identification; that their ownership may be known and distinguished from other stock; that it may be known to whom the particular cattle belong." That stock may be identified in this manner, unless prohibited by a positive statute, is beyond dispute. Whether the testimony offered upon this point, in any given case, is sufficient to convince the mind, beyond a reasonable doubt, as to the ownership of the property, is a question of fact to be determined by the jury.

Hereafter all controversies upon this point will be avoided; for the legislature, since the offense charged against appellant was committed, recognizing the difficulty that cattle-men in this state might have in identifying and proving ownership of their stock, and for the purpose of removing all doubts as to the admission of this kind of evidence, passed an " act to regulate proceedings in certain criminal cases "; which, among other things, provides that " upon the trial of any public offense which concerns any neat cattle, horse, mule, or other animal running at large upon any range in this state, the brand and other marks upon such animal shall be *prima facie* evidence of ownership." (Gen. Stat. 4561.)

2. Section 9 of the " act to regulate marks and brands of stock," approved February 27, 1873 (Gen. Stat. 757–767), provides that "no mark, brand, or counter-brand shall be considered as lawful if not recorded as specified in this act." Neither Carlin, Vail Bros., nor appellant had their marks and brands recorded as required by this act. Appellant contends that, under the provisions of section 9, the use by Vail Bros. of the marks and brands in question was unlawful; that the proof of their ownership of the cattle by such marks and brands was insufficient to establish even *prima facie* evidence of ownership. No objection was made in the court below to the admission of oral testimony to prove the marks and brands of the Vail Bros., and the only question in relation to this statute which can be reviewed by this court is, whether or not the court erred in giving the following instruction: " Considerable has been said in relation to the brands and marks of Vail Bros. not being recorded. I simply state that that is immaterial in this case.

That question is out of the case entirely, for the reason that the object of the law in requiring cattle-men to record their brands is simply to give notice to other persons. If a person feloniously takes cattle, it is wholly immaterial whether the brands are recorded or not."

We are of the opinion that the act referred to has no application to the facts of this case. The testimony was clear and positive that Carlin had, for years prior to the sale of his cattle to Vail Bros., used the marks and brands in question. If it should be conceded that, under the provisions of section 9, it was unlawful for Carlin or the Vail Bros. to use these marks and brands without having them recorded, still the fact remains that they did use them; and there is no provision in the statute which prohibits them, in a case like this, from identifying their cattle by such marks and brands, and having such identity considered as testimony tending to prove their ownership.

The authorities cited by appellant from Texas must be construed with special reference to the statute of that state, which provides that "no brands, except such as are recorded by the officers named in this act, shall be recognized in law as any evidence of ownership of the cattle, horses, or mules upon which the same may be used." (1 Pasch. Dig., art. 4659.) Under this provision, the courts of that state have decided that oral testimony of the brands was not permissible *as evidence of ownership;* but was admissible, in connection with other evidence *for the purpose of identifying the cattle.* (*Hutto* v. *State,* 7 Tex. App. 47, and authorities there cited.) It has also been held in that state, notwithstanding the provisions of the statute requiring the marks as well as the brands to be recorded, that the unrecorded marks were competent evidence to prove the ownership of animals alleged to have been stolen, because the prohibition in the sections we have quoted is confined to *brands* alone. (*Johnson* v. *State,* 1 Tex. App. 345.) These authorities, instead of being opposed to the views we have expressed, fully sustain the conclusion we have reached, that the statute of 1873 has no application to this case. (See also *Dixon* v. *State,* 19 Tex. 134; *Poage* v. *State,* 43 Tex. 455; *Kelly* v. *State,* 1 Tex. App. 634; *State* v. *King,* 84 N. C. 737.)

Suppose the court did err in stating that the object of the statute, in requiring cattle-men to record their marks and

brands, is *simply* to give notice to other persons, how could such an error, upon an immaterial point, prejudice appellant?. The court correctly stated one of the objects which the legislature had in view in passing the statute; but it need not have stated any of the objects of the law. If the statute was inapplicable, the court was not called upon to construe it. It may, therefore, and it will, be admitted that in civil cases, between. stock-owners having the same brands and marks, where one party has his brands and marks recorded, and the other not, or in other civil cases requiring a construction of the entire statute, it might be a material error for the court to limit the objects of the statute to the one stated in the instruction; but in the case at bar it was wholly immaterial. The only purpose and effect of the instruction was to call the attention of the jury to the fact that the statute in question had no application, and that the question whether Vail Bros. had their brands and marks recorded was *immaterial in this case.* To this extent the instruction was correct. The fact that the reason given for the conclusion reached was incorrect was a harmless and immaterial error, which could not possibly have misled the jury, or in any manner prejudiced appellant.

3. It is next claimed that the court erred in giving this instruction: "There is another question. The Vail Bros. have not demanded of Mr. Hancock the cattle sold by defendant to him, and they have not demanded of Zeigler Bros. payment for the cattle sold by defendant to them. These are matters resting entirely with the Vail Bros., as it is their own business, and does not affect the case at all. They are claims optional with them whether they will enforce or waive."

There is no valid objection to this instruction. It stated the law correctly. Neither the guilt nor innocence of the defendant, the ownership of the cattle, or credibility of the witnesses, depended in any manner upon the question whether Vail Bros. had demanded payment or possession of the cattle from the person who had innocently purchased and paid for them from the defendant.

4. The court did not err in refusing to give the instructions A, B, and C, requested by appellant, as it had, of its own motion, given clear, concise, comprehensive, and correct instructions, covering all the points embodied therein.

The judgment of the district court is affirmed.