OF

# THE COURT OF APPEALS

OF KENTUCKY.

## SUMMER TERM, 1865.

CASE 1—PETITION ORDINARY—JUNE 6.

## Plummer vs. Newdigate.

APPEAL FROM FLEMING CIRCUIT COURT.

1. The mere fact that a horse is branded with the letters "*U. S.*" does not, *per se*, prove the title to be in the United States.

2. Although an action may be maintained for breach of an implied warranty of title to a horse in the vendor's possession, without a judicial eviction as required in express warranties, yet the proof of breach should, in such case, be peculiarly satisfactory.

3. The *ex parte* act of a military officer in seizing a horse claimed to belong to the United States can have no effect on the question of ownership, without strong proof that the act was right.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

On an implied warranty of the title of a horse sold by the appellant to the appellee for $80, paid at the time of the sale, this suit was brought, and verdict and judgment were rendered for the sum so paid.

The petition charged that, after the appellee bought the horse, the Federal brand "*U. S.*" was discovered on its

shoulder, in consequence of which, a provost marshal took the horse from the plaintiff, and that, consequently, the appellant had no title. There is no direct allegation that the horse was the property of the United States.

The appellant filed a demurrer to the petition, and also an answer, insisting that his title was good. The record does not show any judgment on the demurrer.

On the trial, witnesses testified to the following facts:

1st. That one Richards, in Rowan county, holding the horse as his own, had sold it to Hill, and that Hill afterwards sold it to the appellant, in Fleming county.

2d. That the horse, being gaunt and having "a cavalry lope," had been examined while in the possession of Richards, and also while in the possession of the appellant, to ascertain whether it had ever been in the service of the United States, but that no Federal brand had been discovered.

3d. That the appellee, professing to have taken the horse with other horses to Cincinnati for sale, and that he was there informed by a Federal officer that it had the Federal brand, tendered it back to the appellant and demanded restitution of the price paid, and also $10 for expense of the trip; and that appellant, proposing to take the horse and refund the price by then paying $50 and the residual $30 in a short time, the appellee rejected the offer, not because the whole $80 were not tendered in hand, but only, as must be presumed, because he claimed more.

4th. That, after the failure of this negotiation, the appellee told a provost marshal in Flemingsburg that he had in his possession a horse branded "U. S.," and that thereupon that officer, as he himself testified, finding the brand after close scrutiny, took the horse as the property of the Federal Government.

On the trial, the circuit court virtually instructed the jury that the mere brand, if it existed, was "sufficient evidence" to prove that, when the horse was sold to the appellee, it was the property of the United States, and not of the appellant; and, after verdict, refused a new trial.

On this presentation of the case, three questions arise—1st, the sufficiency of the petition on dumurrer; 2d, the instruction just alluded to; and 3d, the effect of the tender.

1st. The petition fails to aver title in the United States, but rests on an assumed inference from the obscure brand on the horse; and we cannot admit that, as a deduction of law, that simple fact, *per se*, proves such title. Stolen horses have been often sold to the Government, and no such sale could pass a title without the agency or consent of the owner. Multitudes of horses, once the property of the United States, and properly branded as such, have been captured by their enemy, and, by the laws of war, belong to the captors, who may lawfully sell or exchange, and thereby pass a good title to them against the Government, whose lost title could be restored only by repurchase or recapture before such sale or exchange by the captor. Many Federal officers have owned horses in their own personal right, and, after branding them with " U. S.," have lost them or sold or exchanged them without obliterating that brand or affixing any counter-brand; and horses may have been branded, and sometimes have been, without legal authority and without vesting any title in the United States; consequently, the mere allegation of such a brand is not equivalent to an averment of title in the Federal Government to the horse in this case, nor is such a title a legal deduction from such a simple allegation.

We are therefore of the opinion that the demurrer to the petition ought to have been sustained.

2d. For the like reasons, and especially under the complexion of this case, the circuit court misled the jury by refusing to instruct that the mere brand was insufficient to prove title in the United States, and thereby virtually instructing them that it was sufficient and *prima facie* conclusive.

Although an action may be maintained for a breach of an implied warranty of title to a horse in the vendor's possession, without a judicial eviction, as required in express warranties, yet, to entitle the plaintiff to a recovery without such eviction, the proof of breach should be peculiarly satisfactory. The *ex parte* and *impromptu* act of the military officer is far from

Cin., Ham., and Dayton R. R. Co. and Dayton and Mich. R. R. Co. vs. Spratt.

being a judicial decision, and can have no effect in this case without strong proof that his act was right. The proof not being such in this case, the circuit court erred on the instruction, and ought to have decided that, while the unexplained and uncorroborated brand was an admissible circumstance, yet, that it alone was not, in such a case and against the opposing circumstances, either conclusive or sufficient; and, consequently, also, the verdict was not, in our opinion, authorized by the testimony.

3d. But the court ought to have granted a new trial on another ground. The appellee volunteered a surrender of the horse to the provost marshal, who may otherwise never have taken it, and had no right to do so unless it was then the property of his government. The previous tender of the horse to the appellant was on a condition he was under no obligation to perform; and his tender of the price, not being refused on account of the mode of it, was good; and the appellee's refusal to restore the horse, and his tampering with the provost, may have been, and probably was, the sole cause of the loss of the horse by both parties. This alone ought, in our judgment, to have defeated the action, unless there had been conclusive proof of title in the United States.

Wherefore, the judgment is reversed, and the cause remanded for a new trial.