BENNETT HURST, v. TERRITORY OF OKLAHOMA.

(Filed ·February 15, 1906.)

1. LARCENY OF DOMESTIC ANIMALS—Ownership,    Evidence    of. In a prosecution for larceny of domestic animals,    under sec. 561 of the crimes act, evidence of marks and brands is competent to prove ownership, although such marks or brands are not recorded.

2. SAME—Evidence—Statutes.  Art. 4,  chap. 3,   sec. 101,  Wilson's Annotated Statutes does not make  unrecorded brands  incompetent as evidence of ownership.

3. SAME—Indictment—Want of Consent.  In a prosecution for lar ceny of domestic animals under sec. 561 of the   crimes act, since such section does not define the offense, the common law  rule applies in this Territory; hence, in such case, it is not necessary to allege in the indictment want of ·consent on the part of the owner of the stolen property to part therewith, nor need such non-consent be proved.

4. SAME—Evidence Showing other Offenses.  In  a  prosecution  for larceny of domestic animals,  where the offense charged is theft of one animal of a number delivered by defendant at one time, it may be shown that two other animals sold and  delivered at  the same time were claimed by third persons.

5. NEW TRIAL—Motion for—Newly Discovered Evidence.  Where a verdict of guilty is returned on September 15th, and a motion for a new trial on the ground of newly discovered evidence is filed on the succeeding day,  together with the affidavit of B., stating  that he had heard M. say that ·the steer alleged to  have been  stolen was known to him to be on the range after.the same had been alleged to have been sold and  delivered; and  where the  motion for new trial was not heard and passed upon for twenty-one days after the rendition of ·the verdict; and where ·there is no showing of any attempt to procure the affidavit or testimony of M. in support of the motion for new trial, and no sufficient reason shown why such affidavit or testimony could not have been obtained; and  where the newly discovered evidence is cumulative  in  its character:   Held that it is not error for the trial court to overrule a motion for new trial upon such ground.

(Syllabus by the Court.)

*Error from the District Court of Kiowa County; before F. E. Gillette, Trial Judge.*

*Jones, Lucky & Brown,* for plaintiff in error.

*P. C. Simons, Attorney General,* and *Thos. W. Connor, Co. Att'y* for defendant in error.

Opinion of the court by

PANCOAST, J.: This action was brought in the district court of Kiowa county, on an indictment found on October 9, 1902, jointly against the plaintiff in error, Bennett Hurst, and J. J. Hurst, charging them with the offense of larceny of a domestic animal, under section 561 of the crime act. The animal alleged to have been stolen is described in the indictment as one brown two year old steer, branded on the hip, the personal property of Thomas Waggoner. The defendants pleaded not guilty to the indictment, and thereafter trial was had at the September, 1904, term, which resulted in a verdict of guilty against the plaintiff in error Bennett Hurst, the court directing a verdict of acquittal as to J. J. Hurst. Motion for new trial was heard and overruled.

Three assignments of error are alleged in the petition, and are argued in the brief. We will consider these in their order. The record discloses that R. E. Bullock, of Greer county, entered into contract with the defendants below for the purchase of some twenty five or more head of cattle, eighteen head of which were delivered to Bullock either at his home in Greer county or at some other point on the Red River. The place of delivery, however, we deem to be immaterial, in so far as this case is concerned. The Territory's contention was that the steer alleged to have been stolen and sold to Bullock was one of the eighteen head de-

livered. This steer was branded "DDD." The eighteen head of cattle purchased were delivered by the defendants and their men to Bullock either at his home in Greer county on the 5th day of February, 1902, or if not delivered at that place, then delivered to Bullock at a point on the Red River on that day, and driven by Bullock, assisted by the men whom defendants had assisting them, to the home of Bullock. They were put into a corral, and the next morning were turned into a small pasture with a few head of milk cows, and were retained there some time, until the steer in question was discovered to be branded with a brand blonging to one Thomas Waggoner. As soon as the steer was discovered to be Waggoner's, Bullock notified him of that fact, and one of Waggoner's men came to Bullock's place, took possession of the steer, and drove him away. This is only a partial statement of the facts as shown by the record, but we deem it sufficient for the purpose of enabling us to proceed with the discussion of the case.

The first assignment of error is a general one, that the verdict of the jury is contrary to the law and evidence, and that the evidence is wholly insufficient to support the verdict. In the argument of this proposition, it is claimed by plaintiff in error that there was no evidence offered that Waggoner was the owner of the steer, except that it was branded with his brand, and that there was no evidence offered that the steer was taken without Waggoner's consent. The evidence shows conclusively, and there is no contradiction of it in the record, that the steer was branded DDD; that this was Thomas Waggoner's brand, and was well known by the witnesses as his brand, and had been well known for a number of years. The evidence in this case does not show whether

the brand was or was not recorded, and it is contended that an unrecorded brand is not competent evidence to prove ownership, but is only evidence of identity; that a brand, to be competent evidence of ownership, must be recorded; and in support of this contention, Article 4, of chap. 3, sec. 101, Wilson's Annotated Statutes, as well as several Texas cases, is cited.

Section 101 of Wilson's Annotated Statutes, referred to, is as follows:

"In all suits in law or in equity or in any criminal proceeding, when the title to any stock is involved, the brand on any animal shall be *prima facie* evidence of ownership of the person whose brand it may be, provided that such brand has been duly recorded as provided by law."

This section of the statute is copied from the Dakota statute, and is identical with the statute upon that subject of several of the Western states.  Nevada's statute is identical with it, and the question has been discussed there, as well as in New Mexico and California.  These statutes have held that this statute has no application to the use of a mark or brand in the identification of cattle, as evidence of ownership, in a criminal prosecution for larceny.  In the case of *State v. Cardelli,* 10 Pac. 433, the same objection was there made, it being contended that evidence by brand, where the brand was not recorded, was not competent to prove ownership:  The facts in that case showed that the cattle stolen had been butchered; that they were identified by the brands on the hides; that two persons in that neighborhood used brands with the same letters,  the only distinction  being a difference in the style of the letters.  The witnesses, however, frankly acknowledged that they had no means of iden-

tifying the cattle except by the brands and ear marks. A conviction was had in that case and the judgment affirmed by the supreme court.

It is a matter of common knowledge that in many instances, and particularly with persons owning large herds of cattle, that the only method of identification and the only proof of ownership that can be produced or obtained is the brand or marks, and if it should be held, as contended for by plaintiff in error, that this statute makes evidence of ownership by brand incompetent, except where the brand is recorded, then in such cases it would be absolutely impossible to prove ownership.

Besides, under another section of our statute, the question of ownership in a case of larceny is of much less importance than it was under the common law. Section 5362, Wilson's Annotated Statutes, provides:

"When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

And in the case of *Martin v. Territory,* 4 Okla., 105 where the proof showed the property was taken from one J. S. Lyous, who was the agent of the owner, and the indictment charged that he was the owner of the property, it was held not to constitute a fatal variance. And in *People v Barringer.* 11 Pac. 799, which was a case of larceny and in many respects identical with the case at bar, the question of ownership being in dispute and proven only by ear marks, and as in this case, there being no pretense or evidence that the defendant had any right to the property or its possession, this

statute was applied and the court there held the evidence to be sufficient to support the verdict. In the case of *Territory v. Chavez,* 30 Pac. 903 (New Mexico,) where oral evidence of brands was the only evidence introduced and relied upon to prove ownership, it was held that to have excluded such testimony would have been to prevent proof of the true ownership of the animal, and to defeat the prosecution of the offense. And it was there held "that the brand law does not require that the ownership of the animal must be proved by the brand itself. Ownership may be proved by flesh marks, or any other proper evidence, in the same way as if no brand law was in existence. Proof by brand, under our statute, is only an additional method of proving ownership, and is especially applicable to range animals."

A careful examination of the Texas authorities cited will show that they are not applicable here, as that state has an entirely different brand law, which is as follows:

"No brands, except such as are recorded by the officers named in this act, shall be recognized in law as any evidence of ownership of the cattle, horses or mules upon which the same may be used."

This section of the Texas statute specifically prohibits the courts from recognizing evidence of ownership of cattle or horses by brand, unless such brand is recorded.

Under this head, it is also contended that the Territory failed to prove the want of consent of the alleged owner to part with the property, and in support of this proposition we are cited to the case of *Perry v. State* (Nebr.), 63 N. W., 26, and we are frank to say that if this case correctly states the law, then the verdict in this case is not supported by the evidence. That case was a prosecution for larceny, and it is

there held "where non-consent is an essential ingredient in the offense, as it is here, direct proof alone from the person whose non-consent is necessary, can satisfy the rules. You are to prove a negative, and the very person who can swear directly to the negative must, if possible, always be produced. Other and inferior proof cannot be resorted to until it be impossible to procure this best evidence. In such case, mere presumptive, *prima facie* or circumstantial evidence is secondary in degree and cannot be used until all of the sources of direct evidence are exhausted."

In that case, the owner of a horse drove into town about six o'clock in the evening, and hitched at a rack in one of the principal streets of the city, the horse being attached to a vehicle, and about ten o'clock the same evening, he returned to the place where he left his rig, and discovered that his horse was unhitched from the buggy, and the latter was gone. That some five weeks thereafter the vehicle was found in the possession of the defendant. The owner of the property being called as a witness testified in detail to the entire transaction, but failed to state in direct terms that the property was taken without his consent; and the court held that so far as the testimony in the record disclosed, the buggy may have been taken by permission of the owner, or under a claim of title or under circumstances which repelled all presumptions of felonious intent; that it was necessary, to support a verdict of conviction, that upon the trial the owner should have stated in terms that he did not consent to the taking of the buggy. And the court gives as a reason for this rule that his testimony is the best evidence of the fact, and secondary evidence is allowable only when primary or the best evidence is not attainable.

It may be that under the statute of Nebraska this decision is correct, as in a few states, as in Texas, statutory larceny, whereof non-consent is an affirmative element, the non-consent must be alleged in the indictment and proved as alleged. However, nowhere in this case does the court refer to any statutory provision. The rule is there laid down as one of general application, regardless of statutory construction, and as such, it is neither sound in reason nor correct in principle. It never was the rule of the common law, that non-consent must be shown, and that the owner of the stolen article must be produced as a witness to prove such non-consent. Bishop, a recognized authority upon criminal law and procedure in vol. 2, section 752-a of his work in Criminal Procedure, states the law to be:

"At common law, except under such special circumstances as will vary the rule only to outward appearances, if the owner of the chattel consents to another taking it, such taking cannot be larceny. *If the consent was given, it is a matter simply of defense.* Hence, non-consent is not averred in the indictment, and need not be proved. There are, as in Texas, statutory larcenies whereof non-consent is an affirmative element. Then non-consent must be alleged by the prosecutor and proved. In such a case, while we have seeming rulings that the agent or his owner must be called to the non-consent, the better doctrine accepts as adequate in law circumstantial evidence and the testimony of other witnesses."

This is the correct rule, and is followed by all the well considered decisions which are not controlled by some peculiar, statutory provision. In the case of *People v. Davis,* 31 Pac., 1109 (Cal.), it was held that the owner of the article stolen need not be produced as a witness for the state, if the felonious taking can be established by other competent

evidence. It was also held that the indictment or information need not allege the taking to be against the will of the owner, and that therefore non-consent is not necessary to be averred in the indictment, and need not be proved. See also: Mc-Clain's Criminal Law & Procedure, vol. 1, p. 558; *Wedge v. State,* 7 Lea, 687.

Our statue providing a    penalty for stealing    domestic animals does not define the offense, but simply provides that if any person shall steal the animals mentioned, he shall be guilty of a felony, and on conviction thereof, shall be punished by confinement in the Territorial penitentiary. The common law rule applying, therefore,  in this Territory,  under this statute, the authorities above cited are in point, and the correct rule here is  the one laid  down by Bishop.  It follows that both contentions under this head are not well founded.

The second assignment of error is that the court erred in permitting the Territory to introduce evidence of the commission of separate and distinct offenses, committed at a different time than that alleged in the indictment.  This proposition is directed at evidence  which showed that among the cattle delivered by the defendant there were two others that were claimed by third persons, and which were turned over to them.  It is insisted that the evidence shows that whatever the facts may be in this regard, that if any other stolen cattle were delivered to Bullock, they were delivered at different times, and  therefore the evidence of the  commission of other crimes was not competent to be introduced in this case. Counsel's position cannot be upheld  here for two  reasons, first, that there is no exception saved to the introduction of testimony under this head.  The only objections shown any-

where in the record before us are on pages 28 and 31. On page 28, the record shows simply "Objected to", but upon what ground it is not disclosed. Nor is there any exceptions saved. On page 31, counsel simply stated that they objected to the statement as to any other steers out of that bunch being claimed by anyone else. This, as an objection, is hardly sufficient, and there is no exceptions saved to the ruling. Besides this, counsel are in error as to the fact that the testimony shows that if any of the cattle delivered were stolen cattle that they were delivered at another time. As a matter of fact, the evidence clearly shows that the witnesses were speaking of the eighteen head that were delivered at one and the same time.

The only remaining contention is that a new trial should have been granted because of newly discovered evidence, which was brought to the attention of the court upon the hearing of the motion for new trial. This evidence was in the form of an affidavit made by one Ben Baker, stating, in effect, that he heard one Cal McElroy say that he knew that the steer alleged to have been stolen was not delivered to Bullock at the time the defendant delivered the cattle sold to him, as the steer was on the range a long time after the delivery, and that if he, McElroy, was a witness in the case, he would swear to such state of facts.

It will be remembered that McElroy was an employee of Waggoner, the owner of the steer, and was the person who demanded and took the steer from Bullock's and returned it to Waggoner. Upon the strength of this affidavit of Baker, the defendant also made an affidavit, embodying therein, in substance, the facts set out in Baker's affidavit, together with the further statement that the facts stated in the affidavit·

were not communicated to him until after the trial, and that inasmuch as McElroy was in the employ of Waggoner, the defendant did not interview or consult him as to what his testimony would be; that he was misled by the witness not being present at the trial, and that he had no opportunity to see McElroy after he, Hurst, was indicted. That defendant was induced to believe and had been informed that the witness would appear against him on the trial, and that his testimony would be prejudicial rather than favorable. The defendant, in this connection, as an excuse for not getting the affidavit of McElroy to the facts stated, asserted that McElroy was then living in Dumas, Moore County, Texas, and was not accessible.

The defense in this case was a denial that the steer alleged to have been stolen was one of the number delivered to Bullock; and the statements to which it is claimed McElroy would testify would be in support of this contention; for, if the stolen steer was on the range long after the delivery of the cattle was made, then it would follow that it was not included in the number delivered, and it is only in this sense that the evidence would be at all material.

It will be noticed, therefore, that the evidence is in its nature cumulative, and verdicts are rarely set aside because of newly discovered evidence of this class, and particularly is this true, unless the newly discovered evidence could reasonably be expected to have changed the verdict. Much is left, under such circumstances, to the sound discretion of the trial court. It would seem that the newly discovered evidence, in the form presented, did not impress the trial judge with the view that the evidence if introduced would have been likely to change the result. But, aside from this, it will be noticed

that the statements of Baker are merely hearsay, and do not come from McElroy himself. The same statements made by the defendant in his affidavit are even less certain in character; coming as they do through a third party; and while it is stated that McElroy was then in Texas, there is no reason given why his affidavit could not have been procured in time to be used upon the motion for new trial. If there was a well grounded belief that McElroy had made any such statements, upon application to the court the hearing of the motion for new trial could have been deferred for any reasonable time, sufficient to enable the defendant to procure the affidavit. With the facilities that we now have for communication between persons in different states and territories, by mail, telegraph and otherwise, it would seem it should not have taken the defendant but a short time to obtain McElroy's affidavit, if the statements which it is claimed he made were in fact made by him. But the record does not disclose that any effort was made to procure such affidavit. Certainly there must be some diligence shown, or some attempt, at least, to procure an affidavit of this character, before the court would hear and listen to the statements second handed. The verdict in this case was rendered on the 15th day of September; the motion for new trial was filed on the next day. This motion discloses the fact that this evidence had then been discovered. The motion was not heard or passed upon for twenty one days thereafter, and the defendant had all this time within which to secure the affidavit of McElroy. It would seem that this claim of newly discovered evidence which came to the knowledge of the defendant so quickly after the rendition of the verdict could have been fully investigated and the affidavit of McElroy could have been obtained long before the motion

for new trial was passed upon. If the testimony of McElroy could have been used, we think the defendant is guilty of laches in not making an attempt to procure it, and not having done so, this court will not say that there was error in overruling the motion for new trial on that ground.

Having carefully examined the entire record in this case, and perceiving no error in the proceedings of the court below, the judgment is affirmed, and the sheriff of Kiowa county is hereby ordered and directed to execute the judgment of the court below.

Gillette, J., who presided in the court below, not sitting; all the other Justices concurring.