THE STATE OF KANSAS v. JACOB WOLFLEY.

No. 15,101   (89 Pac. 1046.)

SYLLABUS BY THE COURT.

1. LARCENY—*Brands on Cattle—Evidence of Ownership.* In a prosecution for larceny the jury have a right to consider the fact that the cattle alleged to have been stolen bore the brand of the complaining witness as some evidence that they were owned by him.

2. INSTRUCTIONS — *Consideration of Defendant's Testimony — Burden of Proof.* A conviction upon a charge of larceny will not be reversed because in referring to the defendant's story the court instructs the jury that they are to determine from all the facts and circumstances whether his defense is probably true, where in the same instruction they are also told that the defendant is not required to prove his innocence and that if after the consideration of all the evidence in the case, including the defendant's explanation, there exists a reasonable doubt of his guilt he must be acquitted.

3. ——. *Reasonable Doubt.* It is not error to include in an instruction defining the term "reasonable doubt" the statement that it is a doubt for which there is some good reason arising out of the evidence or lack of evidence—a doubt for which the jury are able to find a reason in the evidence or lack of evidence.

Appeal from Meade district court; EDWARD H. MADISON, judge. Opinion filed March 9, 1907. Affirmed. Opinion denying a rehearing filed May 11, 1907.

*Fred S. Jackson,* attorney-general, and *John S. Daw-son,* assistant attorney-general, for The State; *H. J. Bone,* of counsel.

*A. T. Bodle, jr., G. E. Stockbridge,* and *Hayden & Hayden,* for appellant.

The opinion of the court was delivered by

MASON, J.: Jake Wolfley appeals from a conviction upon a charge of stealing six head of cattle. The court concludes after a careful consideration of the briefs and record that no material error is shown. To discuss in detail each assignment made would extend this opinion unduly, and only those thought to be of the most importance will be mentioned specifically.

The complaint that questions were asked which assumed as true certain facts prejudicial to the defendant is unavailing, because the witness had already given evidence supporting such assumption. The objection to the introduction of several diagrams of brands because they were copies of others is not well taken, inasmuch as there was specific testimony that those offered were correct. There was no error in allowing opinions to be given regarding the inferences to be drawn from the appearance of cattle brands, even by witnesses whose experience was not such as to enable them to speak with authority, for they had some special training in the matter—the extent of it went to the weight rather than to the admissibility of their testimony.

Questions were asked of a witness for the prosecution upon cross-examination to which the court sustained objections, and this ruling is assigned as error. The circumstances, however, were unusual. The witness had been examined at considerable length, cross-examined, reexamined, and excused. He was recalled later by the state and asked five additional questions. The court sustained objections to several questions then asked in cross-examination, for the express reason

that they had no relation to the additional testimony given and that the whole case had not been opened up. This was within the sound discretion of the court. No request was made for leave to cross-examine further upon the evidence first given.

Among the special instructions asked in behalf of the defendant and refused were seventeen bearing upon the burden of proof and the degree of certainty required for a conviction, seventeen upon the effect of circumstantial evidence, and six upon the necessity of each individual juror being convinced of the defendant's guilt beyond a reasonable doubt before a verdict of guilty could be returned. Most of these instructions, possibly all of them, were correct statements of the law, but no good purpose could have been served by giving all of them to the jury. The charge of the court seems to have included everything on these subjects really necessary to be said.

The only instruction asked the refusal of which, in view of the instructions that were given, sharply presents a debatable question of law reads as follows:

"I further instruct you that any evidence which may have been offered by the state in regard to any brands upon the cattle is only to be considered by you for the purpose of establishing the identity of the cattle in question, but should not be considered by you as proving or tending to in any manner prove ownership of the cattle."

Of this question it is said in volume 1 of Wigmore on Evidence, section 150:

"When an animal is found in B's possession, and the animal bears a brand or other mark, and one of the issues is whether A is the owner of the animal, it is a natural and immediate inference that the animal belongs to the person whose brand it bears, and, if that brand is A's, then to A. This inference, however, while sufficiently probable in the light of practical experience, is in truth a composite one, made up of two steps: First, the inference, from the presence of A's usual mark, that A placed this particular mark—a genuine argument under the present principle, from a

trace to the source of the trace; and, secondly, the inference from the fact that A placed it there, to the fact of his ownership of the animal. The latter step of inference is the vital one; it is perhaps not less natural than the former, but it is more serious in its effect. It would seem that the latter step of inference has been rarely conceded by courts, as a matter of common law; though the former step was universally conceded, it was said that the presence of A's brand was evidence of *identity* (*i. e.* of the animal being one of those originally branded by A), but not of *ownership*. This unduly cautious attitude has been generally corrected by legislation. In most of the stock-raising communities the brand on animals is made evidence of ownership; though in order to encourage registration and thus prevent confusion the rule is applied only to brands duly registered by law."

We regard it as clear that where an animal is found bearing a certain brand a just inference may be drawn that it belongs to the person who uses such brand, and that therefore in the absence of any statute on the subject the jury may treat the brand as evidence of ownership. Moreover, fewer decided cases deny this proposition and more support it than might be supposed from the text quoted. The case of *Peoples v. Devault,* 11 Heisk. (Tenn.) 431, is of the former class; among the latter are *Stewart v. Hunter,* 16 Ore. 62, 16 Pac. 876, 8 Am. St. Rep. 267; *People v. Bolanger,* 71 Cal. 17, 11 Pac. 799; *State v. Cardelli,* 19 Nev. 319, 10 Pac. 433; *Dreyer v. The State,* 11 Tex. App. 631; *Hurst v. Territory,* 16 Okla. 600, 86 Pac. 280. (See, also, *Plummer v. Newdigate,* 63 Ky. 1, 87 Am. Dec. 479.)

Referring to what Professor Wigmore characterizes as the best opinion on the subject, it was said for the majority of the court, in *Queen v. Forsythe,* 4 Ter. L. R. (Eng.) 398:

"We are of opinion that the fact of the prosecutor's brand being upon the hide was a means of identifying it as his property. The practice of branding has become the recognized mode of marking animals so that the owner may recognize them, and so widely used is it that it has become almost the only means employed

for that purpose. Where a person has but a few animals he may be able from frequently seeing them to become well enough acquainted with their appearance to recognize them without, perhaps, being able to point out the various peculiarities by which he knows them. But when the herd is a large one and no one may have had sufficient opportunities to become acquainted with the many little peculiarities which may distinguish the members of that herd from all other animals, then it becomes necessary that some practically indelible mark should be placed on them, and branding has been found to be the best mark for that purpose. It is in every cattle country a well-recognized mode of identification, and to say that it is not a reasonable means is to say that all cattle dealers are wrong in recognizing it as such. It is, of course, not an infallible mark. It may have been put on by mistake, or by fraud, or the animal, though the property of the owner of the brand at one time, may subsequently have been parted with. But these remarks apply equally to whatever marks may be relied upon as proof of identification." (Page 402.)

This argument seems especially forceful when contrasted with that advanced in a dissenting opinion in support of the contrary view, in the course of which this language was used:

"Suppose a man lost a coat and a person was found in possession of it, and the owner of the coat swore that he knew the coat was his because a button was sewed on it bearing his initials. When asked if he put the button there himself, he would answer 'No'; whether he knew the coat otherwise, he would say 'No.' I don't think any judge would contend that this evidence would be sufficient to convict of theft. The evidence no doubt would prove that the button was his, but it would not be sufficient to prove property in the coat. It is some proof that the coat bearing that button belongs to him, but not *prima facie* proof that the coat belongs to him; I mean not sufficient evidence to oblige the incriminated individual to adduce evidence to contradict that statement or explain it. I hold, therefore, that the brand and ear-marks on an animal are not *prima facie* evidence of ownership, so as to find a man guilty of theft, unless there is corroborative evidence in support." (Page 406.)

Where brands have been rejected as evidence of ownership it has usually been because of statutes which forbid their admission for that purpose unless recorded. In these cases it is often said that they are competent only as evidence of identity, apparently meaning that they may be received in the same way as any other flesh-marks—to distinguish the particular animals upon which they are found. (See as to this use of the expression *Sapp v. State* [Tex. Cr. Rep.], 77 S. W. 456, and *State v. Hanna,* 35 Ore. 195, 57 Pac. 629.)    A statute which merely makes recorded brands *prima facie* evidence of ownership was held in *Hurst v. Territory,* 16 Okla. 600, 86 Pac. 280, not to render unrecorded brands incompetent on that issue, the court saying:

"It is a matter of common knowledge that in many instances, and particularly with persons owning large herds of cattle, the only method of identification and the only proof of ownership that can be produced or obtained is the brand or marks, and if it should be held, as contended for by plaintiff in error, that this statute makes evidence of ownership by brand incompetent, except where the brand is recorded, then in such cases it would be absolutely impossible to prove ownership." (Page 604.)

In this state, while there are various statutes recognizing the use of cattle brands, there is none forbidding or regulating their use as evidence of ownership.    In the absence of such a statute there was no error in refusing the instruction asked.

In the course of an instruction with regard to the claim of the defendant that he owned the cattle he was charged with stealing the court said: "It is a question for the jury to determine from all the facts and circumstances in the case whether or not such defense is probably true."    It is contended that this language was seriously prejudicial to the defendant because it suggested a shifting to him of the burden of proof and invited a verdict based upon a mere probability.    Any tendency it may have had in that direction, however,

was counteracted by the concluding words of the same instruction:

"You are instructed that a defendant is never compelled to prove his innocence of a crime charged against him. It always devolves upon the state to prove his guilt beyond a reasonable doubt, and if after the entire consideration of all the evidence in this case, including any explanation the defendant has offered to the fact of possession of said cattle, and all defenses he has made to the charge against him, there exists a reasonable doubt in your mind of his guilt of the crime charged against him in the information, you must acquit him."

A final complaint is based upon this statement, incorporated in an instruction defining the term "reasonable doubt":

"A reasonable doubt means a doubt which has some good reason for it arising out of the evidence or lack of evidence in the case; such a doubt as you are able to find in the evidence or lack of evidence a reason for."

In *The State v. Patton*, 66 Kan. 486, 71 Pac. 840, the giving of an instruction that a reasonable doubt was one for which the jury could give reason was held not to require a reversal. The present case is well on the safe side of the debatable ground there considered. Whatever objections there may be to a juror's being told that in order to regard a doubt as reasonable he must be able to give—that it to state—a reason for it, no harm can result from advising him that no doubt is reasonable unless a reason for it exists, and that is substantially the effect of the instruction under consideration.

The judgment is affirmed.

OPINION DENYING A PETITION FOR A REHEARING.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Instructions—Circumstantial Evidence.* A conviction upon a criminal charge will not be reversed because of an omission of the trial court to instruct the jury that the facts relied upon to justify a conviction upon circumstantial evidence must be consistent with each other, where no separate request was made with regard to that proposition, and where the court gave an instruction regarding the effect of circumstantial evidence which was otherwise sufficient.

2. ———— *Presumption of Innocence — Reasonable Doubt — Instruction.* An instruction that "the law presumes and you [the jury] must presume him [the defendant] to be innocent of the crime with which he is charged . . . until he is proved guilty beyond a reasonable doubt by competent evidence" sufficiently indicates that the presumption of innocence is an affirmative force, equivalent to so much evidence in his behalf, at least where no request is made for a more specific statement of the proposition except in connection with other matters.

The opinion of the court was delivered by

MASON, J.: In a petition for a rehearing the defendant's attorneys have again presented at considerable length and with much force the grounds relied upon for a reversal. These have all been reexamined with care, but the court remains of the opinion that no reversible error has been shown. Some of the contentions to which more specific attention has now been directed perhaps require fuller discussion than they received in the original opinion. It was there said that although many of the instructions asked in behalf of the defendant were correct statements of the law no complaint could be made of their refusal, because the charge of the court included everything really necessary to be said on the subjects to which they related. It is now pointed out that the instructions given with regard to circumstantial evidence did not include the statement that the circumstances relied upon to establish the defendant's guilt must all be consistent with

each other. The correctness of such statement as a proposition of law of course cannot be questioned. Its truth is so obvious, however, as to make its omission from the charge a matter of doubtful importance under any circumstances. There was nothing in what was said to the jury to suggest that a conviction might be based upon facts that were inconsistent with each other. They were informed in set terms that in order to convict upon circumstantial evidence they must find each essential fact in the chain of circumstances to be true beyond a reasonable doubt. They could not by the evidence be convinced beyond a reasonable doubt of the existence of two separate circumstances or conditions that were inconsistent with each other. A jury may be given credit for knowing this as well before as after it is told to them. It is true that in stating what is essential to a conviction upon circumstantial evidence it is usual to mention the necessity that all the matters relied upon shall be consistent with each other, but this is done ordinarily by way of recital or assumption. The accepted formula is that the facts proved must be *not only* consistent with each other and with the defendant's guilt, but inconsistent with any other reasonable hypothesis. All reference to the requirement that the facts should be consistent with each other is sometimes omitted, however, doubtless on the theory that it is superfluous. (See *The State v. Asbell,* 57 Kan. 398, 411, 46 Pac. 770; *The State v. Andrews,* 62 Kan. 207, 61 Pac. 808; Burrill, Circum. Ev. 737; Blashfield, Instr. to Jur. § 314.) We cannot regard its omission in the present case as material error, especially as no separate request was made covering this particular point. In four of the instructions asked with regard to the effect of circumstantial evidence the phrase in question was used, and in five others on the same subject and substantially of the same scope it was omitted. The matter was never presented to the court as an independent proposition.

Complaint is also made that the jury were not suffi-

ciently advised concerning the character and effect of the legal presumption of the defendant's innocence. This presumption amounts to something more than a requirement that the state must take the initiative and prove its case beyond a reasonable doubt. It is tantamount to affirmative evidence, and it is right that the jury should so understand it. Five instructions were asked in which this matter was referred to, but no one of them stopped with the mere statement of the rule. In each there was an admonition to observe it or a direction how to apply it that was at least unnecessary and gave the instruction something of the aspect of an argument for the defendant. The distinction between the presumption of innocence and the requirement that the prosecution shall prove its case beyond a reasonable doubt is fully treated in *Coffin v. United States*, 156 U. S. 432, upon which case the defendant places great reliance. There a conviction was reversed because of the refusal of the trial court to give an instruction reading as follows:

"The law presumes that persons charged with crime are innocent until they are proven by competent evidence to be guilty. To the benefit of this presumption the defendants are all entitled, and this presumption stands as their sufficient protection unless it has been removed by evidence proving their guilt beyond a reasonable doubt."

In the present case the following language was embodied in the charge:

"The law presumes and you must presume him [the defendant] to be innocent of the crime with which he is charged and each and every material ingredient thereof until he is proved guilty beyond a reasonable doubt by competent evidence, and if the evidence in this case leaves upon the minds of the jury any reasonable doubt of the defendant's guilt the law makes it your duty to acquit him."

This must be regarded as a sufficient indication that the presumption of innocence is a positive force on the side of the defendant, at least in the absence of a re-

quest for a more explicit statement of that principle disassociated from other matters. Substantially the same language has been held sufficient even where a specific request was made to instruct that the presumption had the force of evidence, as in the cases here quoted from:

"A still further contention is that the court erred in refusing the eighth instruction asked by defendant. The instruction read as follows: 'The court instructs the jury that the law presumes the innocence, and not the guilt, of the defendant, and this presumption is to be *taken by you as evidence in the defendant's behalf.* This presumption of innocence goes with the defendant throughout the trial and protects him at every stage of the proceedings, entitling him finally to an acquittal at your hands, unless overcome by other evidence which satisfies you of his guilt beyond a reasonable doubt.' It was refused as asked, the words in italics stricken out, and then given. While the presumption of innocence in favor of a defendant upon trial for a criminal offense is a rebuttable presumption, it requires evidence to overcome it, and to show his guilt beyond a reasonable doubt before he can be convicted, yet the calling it evidence adds no significance to its force or effect. After all, it is still a presumption, which the law indulges in his favor. No error was committed, we think, in the refusal of this instruction as asked." (*State v. Hudspeth,* 159 Mo. 178, 209, 60 S. W. 136.)

"Another instruction refused by the court was as follows: 'The law in this case presumes . . . that every man is innocent, . . . and this legal presumption of innocence is to be regarded by the jury in every case as a matter of evidence to the benefit of which the defendant is entitled.'

"The judge had already of his own motion charged the jury that 'the law presumes every man innocent until he is proven guilty by proper legal evidence, and if you have any reasonable doubt as to the guilt of the defendant, arising from the evidence, you shall acquit him.' . . . The instruction given was a correct exposition of the law. . . . As to the special language of the instruction asked, that 'this presumption of innocence is to be regarded by the jury in every case as a matter of evidence to the benefit of which the defendant is entitled,' we are of the opinion that there

was no error in the failure of the judge to use it. It is true that Mr. Greenleaf uses the same language in one place in section 34, volume 1, of his work on Evidence, and refers to *State v. Pike,* 49 N. H. 398. Considering the whole of section 34 and the New Hampshire case, we see nothing in either that makes the use of the language in question essential or indispensable, nor do we think its use would have strengthened the instruction given. The law presumes, according to all of the authorities, every man innocent of any crime with which he may be charged until and unless the testimony shows beyond a reasonable doubt that he is guilty of it. The charge is in the usual language and is sufficient, and there was consequently no error in the refusal to give the one asked by the defendant's counsel." (*A. L. Wooten v. The State of Florida,* 24 Fla. 335, 353.)

It is contended that the state was permitted to introduce evidence the purpose and effect of which was to suggest to the jury that the defendant had been guilty of other crimes than that for which he was on trial. The court is of the opinion, however, that the evidence was not offered for that purpose and had no substantial tendency in that direction.

Upon the entire record the defendant appears to have had a fair trial. The petition for a rehearing is denied.