[No. 15603.   Department Two.   March 22, 1920.]

# THE STATE OF WASHINGTON, *Respondent*, v. JAN SWAGER, *Appellant*.[1]

LARCENY (17) — EVIDENCE — IDENTIFICATION — STATUTES AS TO RECORDED BRANDS. Rem. Code, § 3156, giving the exclusive right to use a particular recorded mark or brand and intended to prevent infringements, does not preclude oral evidence of an unrecorded private mark upon stock to establish ownership in a prosecution for larceny of cattle.

SAME (26) — ELEMENTS OF OFFENSE — NONCONSENT OF OWNER — EVIDENCE—SUFFICIENCY. Nonconsent of the owner is not an affirmative element of the larceny of property that need be shown by direct evidence of the owner; and the same is sufficiently shown by testimony of the accused that he took the property with the consent of a third party with whom he claims to have traded.

SAME (28)—TAKING AND ASPORTATION—EVIDENCE—SUFFICIENCY. A taking of cattle from the range, rather than from a pasture, may be found by the jury where the pastured cattle were at a considerable distance and more under the owner's eye, while the range was comparatively close and a taking therefrom less liable of detection, the taking having been admitted.

SAME (35)—TRIAL—INSTRUCTION—NATURE OF PROPERTY—"NEAT" CATTLE. In a prosecution for the larceny of cattle from the range, it is proper to instruct the jury that they were "neat" cattle, as it simply distinguishes them as animals of the ox kind.

CRIMINAL LAW (250)—TRIAL—WEIGHT AND EFFECT OF EVIDENCE. In a prosecution for the larceny of cattle from the range, the truth of the accused's story that he traded horses for them with a stranger is for the jury.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered January 30, 1919, upon a trial and conviction of the larceny of cattle from the range.   Affirmed.

*J. W. Speer* and *William M. Clapp,* for appellant.

*N. W. Washington,* for respondent.

[1]Reported in 188 Pac. 504.

FULLERTON, J.—Jan Swager was convicted of the crime of grand larceny, and appeals from the judgment and sentence pronounced against him.

During the year 1918, the appellant resided with his family of minor children on a ranch situated some ten miles south of the town of Ephrata, in Grant county. The information charged him with the larceny from the range of some nine head of neat cattle, the property of one George Drumheller. The record discloses that Drumheller owns quite an extensive ranch in Grant county, north of the appellant's ranch, and ranges thereon and in the territory adjoining it a large number of cattle, his herd at the time of the alleged larceny numbering some two thousand head. Some of the cattle ranged in the vicinity of a place known as the "pot holes," some eight or ten miles distant from the appellant's ranch. The herd, while composed of common stock when purchased by Drumheller in 1905, has been bred to thoroughbred Hereford bulls, and at the time of the alleged larceny showed the marked characteristics of this breed.

On the afternoon of November 15, 1918, the appellant appeared at the Great Northern Railway depot, at Ephrata, with the carcasses and hides of three head of cattle which he tendered for shipment to the city of Spokane. The train was then about due, and the station agent suggested that they be left for shipment on the morning train of the next day. To this the appellant consented, and thereupon left the station, leaving the carcasses and hides in the charge of the agent. Before the arrival of the train on the next morning, an agent or employee of Drumheller learned they were at the depot. He went down and examined the hides and found that they bore not only the characteristic markings of Hereford cattle but had on them the brands and earmarks used by Drumheller in marking

his cattle. The agent swore out a warrant for the arrest of the appellant, which was placed in the hands of the sheriff of Grant county for execution. On going to the ranch of the appellant, the sheriff found him in the act of butchering two heifers, and found five other head of cattle in a box stall in the appellant's barn, all of which showed the characteristic markings of Hereford cattle and bore the brands and earmarks used by Drumheller.

The appellant's first assignments of error are based upon the admission in evidence relative to the ownership of the brands and earmarks found upon the cattle. Mr. Drumheller testified that the brand and the earmark used upon the cattle were originally used in Douglas county, of which Grant county was then a part, by one G. Foppiano, who caused them to be recorded; that Foppiano transferred the right to use them to one Blythe in 1890, and Blythe, in turn, transferred the right to him in 1905, and that he had been using the brand and earmark on his cattle since that time. He testified further that he had not caused the brand to be recorded in Grant county after it was segregated from the county of Douglas. It is the appellant's contention that, since the statute provides for the recording of brands and earmarks, parol evidence is inadmissible to show ownership of a brand. But, as we view the statute (Rem. Code, § 3156 et seq.), it was intended to provide for the exclusive use of a particular mark or brand; that is, to vest the right of use in a particular person, and prevent infringements thereon by others. The user of marks and brands, unless he records them, may not complain of their use by others, unless perhaps such use be wilful and for the purposes of deceit and fraud; yet such marks and brands are marks of identification, nevertheless, and may be given in evi-

dence to the jury along with other evidence to enable them to determine ownership. Under a statute which provided that "no brands, except such as are recorded by officers named in this act, shall be recognized in law as an evidence of ownership of cattle, horses or mules upon which the same may be used," it has been held that oral testimony of an unrecorded brand was not permissible as evidence of ownership, but our statute contains no such inhibition. It simply provides for the recordation of marks and brands, and makes a transcript of such record *prima facie* evidence of ownership. Such a statute does not preclude the use of private marks upon stock, nor does it preclude the showing of such marks as evidence of ownership. We cannot, therefore, find error in the admission of this evidence.

The appellant next complains that there was no evidence of nonconsent of the owner of the property to the taking. On this point, his counsel say:

"We believe it is a universal rule that in larceny cases the alleged owner of the property must be placed on the stand and testify that the taking was against his will; and that his testimony must be positive and direct upon this point, or a conviction cannot be sustained, as it is one of the elements to make out a case."

There are cases which maintain the rule that evidence of nonconsent of the owner of the property to the taking must be shown affirmatively before a conviction can be had for a larceny of property, but these are cases from states whose statutes make nonconsent of the owner an affirmative element of the offense, and cases which have followed the rule of such cases without noticing the distinguishing element. But such was not the rule of the common law, nor is it the general rule under statutes such as ours, which do not make nonconsent an affirmative element of the offense. At

common law, consent of the owner to the taking was a defense and did not require negation either by allegation in the indictment or by proof at the trial, and the rule is the same under the statutes of those states where the common law is made the "rule of decision" as it is with us. 2 Bishop's New Criminal Procedure, §752a; *People v. Davis,* 97 Cal. 194, 31 Pac. 1109; *Hurst v. Territory,* 16 Okl. 600, 86 Pac. 280.

In *State v. Wong Quong,* 27 Wash. 93, 67 Pac. 355, we held that nonconsent of the owner of property alleged to be stolen was simply one of the elements of larceny to be proven in the same manner that other elements must be proved, and under the rule as thus announced there was here abundant evidence from which the jury could well have found that the property was taken without the consent of the owner, even though the owner while on the stand did not directly so testify. There was, moreover, no claim on the part of the appellant that he took the cattle from the range with the consent of Drumheller. While on the witness stand in his own behalf, he testified that he took them from the range with the consent of one John P. Smith, who claimed to be the owner and to whom he gave four head of horses for them. The jury were entitled to make up their verdict from the evidence as a whole, and conceding that the state's evidence was lacking in the particular mentioned, the defect was supplied by the evidence of the appellant himself.

In this connection, also, the appellant questions the sufficiency of the evidence to show that the cattle were taken from the range; contending that the proofs are as applicable to a taking from a pasture as a taking from the range. Since the statute makes it an offense of equal degree to take cattle feloniously from either a pasture or a range, it would hardly seem to be a fatal variance if the allegations were a taking from the

one and the proofs a taking from the other. But here the evidence justified the jury in finding a taking from the range. The pasture where the cattle ranged in part was at a considerable distance from the appellant's place; the range was comparatively close; the cattle in the pasture were more directly under the eye of the owner and his employees than were the cattle on the range; and that there was a taking of the cattle is not only proved beyond question but was admitted by the appellant. Since the felonious taking from the range was less liable of detection than a felonious taking from the pasture, it is hardly to be supposed that resort was had to the place most dangerous to the taker. At any rate, the jury were warranted in finding to the contrary.

The court charged the jury that: "The cattle involved in this case were neat cattle." This is assigned as error because, as it is contended, the question whether the cattle were neat cattle or cattle of some other sort was a question of fact for the jury and not one of law for the court. The statute under which the appellant was informed against (Rem. Code, § 2605) provides that every person who, with intent to deprive or defraud the owner thereof, shall take, lead or drive away "from any range or pasture, any horse, mare, gelding, foal or filly, ass or mule, one or more head of neat cattle or any sheep," shall be guilty of grand larceny. The term "cattle" is a generic term for domestic quadrupeds generally, and in its primary sense embraces horses, mares, geldings, foals or fillies, asses and mules, as well as animals of the ox kind. To distinguish cattle of the latter sort from cattle generally, is the reason for the employment of the term "neat" in the statute. It is, therefore, but a descriptive term, and as a definition of its meaning, since there was no issue as to the character of the cattle, it was proper

for the court to tell the jury that they were neat cattle.
Finally, it is said there was no contradiction of the
appellant's testimony that he traded horses for the
cattle with a person claiming to be the owner. But
aside from the fact that we think the statement con-
tradicted by the circumstances, contradiction was not
necessary to warrant a conviction. The truth or un-
truth of the statement was solely for the jury.

We find no error in the record, and the judgment
will stand affirmed.

HOLCOMB, C. J., TOLMAN, BRIDGES, and MOUNT, JJ.,
concur.