KAUFMAN, Appellant, *v*. COOPER et al., Respondents.

(No. 2,550.)

(Submitted October 10, 1908. Decided December 12, 1908.)

[98 Pac. 504.]

*Claim and Delivery—Appeal—Dismissal—Undertaking—Sufficiency—Pleadings—Issues—Conflict in Evidence—Review.*

Appeal—Judgment—Lapse of Time—Dismissal.
  1. An appeal from a judgment not taken within one year from the date of its entry will be dismissed.
Same—Undertakings—Sufficiency.
  2. An undertaking on appeal from a judgment and an order denying a new trial, in the form of that held sufficient in *Watkins* v. *Morris*, 14 Mont. 354 (to-wit, omitting the alternative condition referring to each), sustains both appeals if properly taken; hence it is sufficient to sustain the appeal from the order, where that from the judgment is dismissed because not taken in time.
Claim and Delivery—Pleadings—General Denial—Matters Admissible Under.
  3. Since in claim and delivery, wherein plaintiff relies on general allegations of ownership and right of possession, a general denial puts in issue both the right of property and the right of possession, as well as all other material allegations of the complaint, and under it defendant may give in evidence any special matters which will defeat plaintiff's claim, the court did not err in permitting defendants, in an action wherein plaintiff sought to recover possession of a stock of merchandise theretofore delivered by him to another to be sold, with an option to purchase, and afterward by the latter placed in the hands of defendants under the same agreement, to abandon their special plea by which they claimed under a sale from their predecessor, and proceed under their general denial.
Appeal—Conflicting Evidence—Review—New Trial.
  4. Where the finding of the jury is based on irreconcilably conflicting evidence, it and the judgment of the trial court in denying a motion for a new trial, upon a review of the evidence, will not be disturbed on appeal.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by Louis Kaufman against C. W. Cooper and another, copartners. From a judgment for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Appeal from judgment dismissed, and order affirmed.

*Messrs. Lamb & Walker,* and *Mr. John J. McHatton,* for Appellant.

*Messrs. Maury & Templeman,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action in claim and delivery. The complaint was filed on June 13, 1904. It is in the usual form, alleging that the plaintiff is the owner and entitled to the possession of a certain stock of goods, wares and merchandise, describing it, and of a certain promissory note for $455, all of said property being alleged to be of the value of $2,500, and that, though possession was demanded of defendants prior to the bringing of this action, it is wrongfully detained by them, to plaintiff's damage in the sum of $500.

The answer denies generally and specially all the allegations of the complaint, except that the defendants refused to deliver the possession to plaintiff. It then proceeds to allege, by way of special defense, as follows:

"(1) That at all times herein mentioned, H. J. Gielens, C. W. Cooper, Jr., and Louis Kaufman were transacting business in the county of Silver Bow, under the firm name and style of Louis Kaufman and Louis Kaufman & Co.

"(2) That the said H. J. Gielens, C. W. Cooper, Jr., and Louis Kaufman, as such copartnership, on or about the —— day of February, 1904, entered into a contract in writing with Sig. Gensberger, of Silver Bow county, Mont., whereby the said copartnership sold to the said Gensberger a stock of goods situated at No. 41 West Park street, in the city of Butte, Silver Bow county, Mont.

"(3) That thereafter, to-wit, on or about the sixteenth day of March, 1904, with the full knowledge and consent, and with the approval of the said copartnership, the said Sig. Gensberger transferred the said contract of purchase to these answering defendants, and that thereupon these answering defendants went into possession of the said stock of goods, and since the said date have largely increased the amount of goods at said stand, and have built up a large and profitable mercantile trade, and that all of the purchase price of the said stock of goods has

been paid, and was paid prior to the commencement of this action, excepting the sum of $2,500.

"(4) That the stock of goods at the said stand is worth the sum of $10,000, and the good will of the said business, and the trade built up and established by these answering defendants, is worth in excess of $10,000.

"(5) That the above-named Louis Kaufman, purporting to act for and on behalf of the said partnership, on or about the fourth day of June, 1904, and purporting to act in pursuance of the terms of the said written contract above referred to, served a notice upon these answering defendants to the effect that they should have twenty days from the date of said service, to-wit, up to and including the twenty-fourth day of June, 1904, within which to pay the balance due upon the purchase price of the said stock of goods, to-wit, the sum of $2,500.

"(6) That notwithstanding the said notice, and notwithstanding the terms of the said contract, and notwithstanding the fact of the largely increased value of the stock of goods situated at said stand, and the large and valuable trade established by these answering defendants at said place of business, and in violation of the said contract, the said Louis Kaufman, still purporting to act on behalf of the said partnership, on the thirteenth day of June, 1904, commenced this action, and ousted and ejected these answering defendants from the possession of their said business and property."

Other matters were also alleged, not material, however, to be considered on this appeal. The answer was filed on June 14. Subsequently, a supplemental answer was filed, in which it is alleged that since the filing of the original answer the sheriff, who had taken the goods from the possession of the defendants, had delivered them to plaintiff, except the promissory note mentioned, which the sheriff did not take, and that the defendants claim a return of all and every part thereof, or its value in case a return cannot be had, and damages.

The replication puts in issue the value of the stock; also the fact, alleged in the answer, that it had in any manner been in-

creased in value by additions made by the defendants. It also denies that the copartnership alleged in the answer had any interest in the property whatsoever, and alleges that the plaintiff was, and now is, the owner and entitled to the possession of the same. It admits that the plaintiff served the notice referred to in paragraph 5 of the defendants' affirmative defense, but denies that Louis Kaufman acted for or on behalf of the copartnership.

The jury found generally for the defendants; that the plaintiff had taken all the property from their possession at the time of commencing the action, except the promissory note, and that a return could not be had; that on June 13, 1904, the date at which it was taken, it was of the value of $5,000, and that the defendants were entitled to recover that amount, with interest from that date. Judgment was entered accordingly. Plaintiff appealed from the judgment and an order denying his motion for a new trial.

1. The defendants moved for a dismissal of the appeals and submitted the motion at the hearing on the merits. One of the grounds of the motion to dismiss the appeal from the judgment is that it was taken more than one year after the date of the entry of judgment. The judgment was entered on February 15, 1907. The notice of appeal was served and filed on February 28, 1908. The right of appeal from the judgment had been lost by lapse of time. (Revised Codes, sec. 7099.) This appeal is therefore dismissed. The ground of the motion, in so far as it is directed at the appeal from the order, is that plaintiff attempted to appeal both from the judgment and the order, and that the undertaking filed does not support the two appeals, or either of them, because it does not contain the necessary alternative condition referring to each. The form of it is the same as that held sufficient in *Watkins* v. *Morris,* 14 Mont. 354, 36 Pac. 452, and *Ramsey* v. *Burns,* 24 Mont. 234, 61 Pac. 129, and upon the authority of these cases the motion to dismiss the appeal from the order is denied. The undertaking is sufficient to sustain both appeals, if both had been properly taken. It is

therefore sufficient to sustain the latter, though the former must be dismissed because not taken in time.

2. The contention made by counsel in their brief on the merits questions the propriety of certain rulings of the court in admitting evidence and the sufficiency of the evidence to justify the verdict. The written contract referred to in the pleadings, having been identified for the plaintiff, was introduced in evidence, and is as follows:

### "AGREEMENT.

"I, Louis Kaufman, hereby agree to sell to Sig. Gensberger, all of the stock of goods, merchandise, book accounts, bills receivable, fixtures, furniture, leases and contracts purchased by the said Louis Kaufman from the Palais Royal Company on the 16th day of February, 1904, and the bankrupt stock of S. M. Wilson, situated at No. 33 West Park street, Butte, Montana, for and in consideration of the sum of fifty seven hundred dollars, and interest thereon from the date of this agreement, until paid, at the rate of ten per cent per annum, to be paid to the said Louis Kaufman by the said Sig. Gensberger, in the following manner, to-wit: The sum of three hundred dollars to be paid upon the execution and delivery of this agreement, and the balance of said amount to be paid as hereinafter specified.

"I hereby agree to employ the said Sig. Gensberger to manage the business for me, at a salary of one hundred ($100) dollars per month, under my supervision, or the supervision of my agent to be hereafter designated for that purpose; that the said Sig. Gensberger shall deliver to me or my agent on each and every day, all moneys received by the sale of merchandise made on the said day, or the day before; when I have received out of the receipts for merchandise now on hand or from any source from said business, the sum of fifty-four hundred dollars, and interest as hereinabove provided, over and above all expenses, I agree to sell and convey the good will of the business, the merchandise, fixtures, furniture, leases, contracts, and book accounts belonging thereto, to the said Sig. Gensberger, and deliver the same to

him, it being understood and agreed that until such time as I shall be fully paid, I shall remain the owner of said business and merchandise, and the same shall be managed for me by the said Sig. Gensberger, without further cost or expense to me, except as hereinbefore stated, provided that if at any time I shall be dissatisfied with his management of said business, I shall have the right to terminate the same upon twenty days' notice in writing to him, and the said Sig. Gensberger shall not be entitled to a bill of sale or to any interest in said goods or business unless he shall within said twenty days pay me whatever balance there may be due me, time being the essence of this agreement. It is expressly agreed that in no event shall this option and contract be valid and binding for more than six months.

"The said Sig. Gensberger shall not as my manager or otherwise order or purchase any additional goods or merchandise without my knowledge or express consent, or the direction of my agent to be hereafter designated, and in case any such goods or merchandise are ordered with my consent, or that of my agent, or put in stock in said business, they must also be paid for in addition to my realizing the total sum of fifty-seven hundred dollars and interest, before I shall be under any obligation to transfer or sell the said business, goods, contracts or property to the said Sig. Gensberger.

"The drawing of this agreement as well as all legal advice, court costs, or costs of lawsuits, had or that may be had in connection with the said Palais Royal Company's business, and any advice that may be had in the future in reference thereto, or to this agreement, or the right of the parties hereto, shall be considered as a part of the business expense.

"All moneys paid out herein as expense must be for proper and reasonable purposes, such as insurance, rent, wages, advice and necessary expenses in conducting said business, and shall be reasonable in amount, and shall be paid by me or my agent, out of the proceeds of sales made in the said business. An account of such expenses shall be kept as well as an account of all merchandise purchased, and the sales thereof, and shall be open

to the inspection of both parties to this agreement, during the said period of six months.

"It is further agreed and understood that the said Sig. Gensberger shall not have the right to put in stock, or sell any goods belonging to himself, and that there shall be no goods sold in said business except such as were purchased from the said Palais Royal Company's sale, and said bankrupt stock of said S. M. Wilson, to said Louis Kaufman, and such as may be hereafter purchased with the consent of said Louis Kaufman or his agent. to be hereafter designated, unless special consent in writing be given therefor by me or my said agent.

"The said Sig. Gensberger shall not as agent or manager for the said Louis Kaufman, have any authority to incur any indebtedness or obligation without his consent, or the consent of his said agent, and shall immediately upon receipt of any moneys arising from the sale of goods or merchandise, or to become due on account of said business, deliver the same to him, or his said agent, and in consideration of the foregoing, the said Sig. Gensberger does agree to pay to said Louis Kaufman, the total sum of fifty-seven hundred dollars, and interest, above specified, and does hereby accept the provisions and conditions of the foregoing agreement.

"The said Sig. Gensberger does hereby agree to act as manager for the said Louis Kaufman under the provisions herein and to exercise his best endeavors to realize from the said sale of said goods and merchandise, for the said Louis Kaufman, the additional sum of fifty-four hundred dollars and interest as provided, over and above all expenses making a total of fifty-seven hundred dollars and interest. In witness whereof," etc.

Other evidence introduced on the part of plaintiff tended to show that at the date of the contract he was the sole owner of the stock of goods; that finding that Gensberger was not disposing of it as rapidly as he desired, he opened negotiations with the defendants with the purpose of inducing them to assume Gensberger's obligations under the contract, they to have the benefit of all the payments out of receipts of sales made by

him up to that time; that the result of these negotiations was
that they agreed to assume Gensberger's place; that thereafter
plaintiff obtained from Gensberger an assignment of the con-
tract to himself, refunding to him the cash payment made by
him; that no written assignment of the contract was made to
the defendants, but that they from and after March 16, the
time at which the arrangement with them was completed, took
possession as plaintiff's agents, and proceeded under the con-
tract, making sales and delivering the daily receipts to the
brother of plaintiff, to be deposited to the credit of the latter;
that this course was pursued from March 16 until June 7, when
the defendants ceased to account for the receipts from sales;
that thereafter, upon demand by plaintiff of such accounting,
or, in lieu thereof, that the defendants relinquish the goods to him,
he was ejected from the place of business by the defendants,
and thereupon he began this action.  On cross-examination he
was required to answer, over his objection, as to payments made
to him or his agent by Gensberger of receipts of daily sales,
and as to the amount still due of the purchase price agreed to
be paid for the goods.  He was, over like objection, required to
answer, also as to cash payments made to him by the defendants
on March 17 and on April 21, amounting to $2,500, the purpose
of the inquiry being to obtain an admission from him that, when
the arrangement was made with the defendants, the Gensberger
contract had been modified in one particular, to-wit, that in
consideration of the payment of $3,000 in cash by the defend-
ants, they were vested with title to the stock, and became debtors
to the plaintiff for the balance of the purchase price.  He stated
that it had been agreed that they would add other goods to the
stock, and that cash to the amount of  $3,000 was necessary
for that purpose; that the amount paid, he having subsequently
consented to accept $2,500 instead of $3,000, was intended for
that purpose alone, and had been expended by him in purchas-
ing such other goods; that these were added to the stock under
the provisions of the Gensberger contract, and that the contract
had not been modified in any particular.  The ground of the

objection to the inquiry touching the Gensberger payments was that the evidence was immaterial, because it was admitted in the answer that there was still due under the contract the sum of $2,500, and it was of no moment what payments Gensberger had made. The objection to the inquiry as to the cash payments made by the defendants was, that the evidence sought was not relevant to the issues made by the answer. In other words, since the defendants had pleaded the Gensberger contract, and admitted that full payment had not been made thereunder, they must stand upon its provisions.

The evidence on the part of the defendants tended to show that, at the time the arrangement was entered into by the parties, the Gensberger contract had been modified to the extent that title to the stock of goods passed to the defendants upon payment of $2,500; that they were not to receive any salaries for their services in selling the goods, and that they became simply debtors to the plaintiff for the balance due after being given credit for this sum, together with the deposits which had been made by Gensberger, the exact amount of which the record does not show. Objection was made to all of this evidence, the ground of objection being the same as that above stated.

During the course of the trial the defendants requested leave to amend their answer by eliminating from it all reference to the Gensberger contract. This request was denied, the court being of the opinion that the matter specially pleaded did not present a material issue, and that the defendants were not precluded by it from introducing evidence tending to show a modification of the contract by which they purchased outright.

The evidence touching payments made by Gensberger was not material or relevant to any issue in the case, yet we think it apparent that the plaintiff suffered no prejudice from the court's ruling. In reply to the inquiries made, plaintiff denied that any payments had been made other than the cash payment of $300, which had been returned. Elsewhere he was questioned as to the amounts deposited which were derived from daily sales,

but failed to give a definite answer, though he impliedly admitted that deposits to some amount had been made.

The principal contention of counsel in this court, based upon their objections to evidence, challenges generally the correctness of the theory upon which the court proceeded. We are of the opinion that the contention is without merit. In statutory actions, often called replevin, to recover the possession of personal property, wherein the plaintiff relies on general allegations of ownership and right to possession, a general denial puts in issue both the right of property and the right of possession, as well as all other material allegations in the complaint, and under it the defendant may give in evidence any special matters which will defeat the plaintiff's claim. (*Gallick* v. *Bordeaux,* 22 Mont. 470, 56 Pac. 961; Phillips on Code Pleading, sec. 492; Cobbey on Replevin, sec. 751.) He is permitted to controvert the plaintiff's evidence; to disprove his allegations; to prove other and inconsistent facts; to prove his own right to possession; to show title in a third party; or to show that he has seized the property as an officer, under process against one from whom the plaintiff obtained it in fraud of creditors. Such being the rule, the court was correct in permitting the defendants to abandon the so-called special defense and proceed under their general denial. In view of the denials, which amount to a general denial, it was not necessary to plead the special defense, and it might have been stricken from the answer without impairing its sufficiency. This was, in effect, what the court did when the ruling was made that the defendants were not precluded by it from introducing proof of their title and right to possession under the general denial.

3. It would serve no useful purpose to state in detail or analyze the evidence in order to demonstrate the conclusion that it is sufficient to sustain the verdict, both as to the ownership of the property and its value. It is in irreconcilable conflict on almost every point, so much so that, if it had been submitted to this court in the first instance, a finding upon it would have been attended with much difficulty. No complaint is made that it was not fairly submitted to the jury under the instructions

given by the court. It presented a question for the jury. Under the rule so often stated, this court is bound to accept the finding of the jury thereon, and the judgment of the district court on review of it on the motion for a new trial, even though it might not have agreed with either the court or jury in their finding thereon.

4. The defendants contend that a finding for the plaintiff could not have been sustained in any event, because the Gensberger contract, construed according to its obvious meaning, gave them the right to retain possession of the stock until the expiration of twenty days from the date of notice to them by the plaintiff that he elected to terminate it, this time being allowed them to make final payment of any balance of the purchase price due at the date of notice. This being so, it is said that this action was prematurely brought, and hence that, though the defendants ought to have been compelled to rely upon the contract as pleaded, their right to possession at the commencement of the action was perfect. Since the order must be affirmed for the reasons stated above, we deem it unnecessary to discuss this feature of the case.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.

ON MOTION FOR REHEARING.

[98 Pac. 1135.]

Briefs—Assignments of Error—Failure to Argue—Rehearing.
1. Where counsel for appellant failed in their brief to argue assignments of error based upon the refusal of the court to give certain instructions, and merely stated therein that under the pleadings and facts in evidence they should have been given, thus leaving it to the supreme court to determine for itself from such examination wherein the trial court erred in refusing them, a petition for rehearing on the ground that in its decision the appellate court overlooked such assignments of error has no merit.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

The petition for a rehearing of this cause states several
grounds therefor—among others, that in the original opinion the
court overlooked and failed to notice the several assignments of
error upon the refusal of the trial court to submit certain in-
structions requested by plaintiff. In making this contention
counsel overlook the condition of the brief submitted at the hear-
ing. The assignments are properly made, but the argument
in support of them amounts to no more than a sugges-
tion that this court submit the instructions to examination
and determine for itself wherein the court erred in refusing to
give them. The argument, if it may be called argument, is,
in substance, that under the pleadings and facts in evidence they
should have been given. It was thus left to this court to find
out for itself the particular error upon which counsel relied.
If counsel deemed it not worth the trouble to make clear the
error upon which they alleged prejudice, surely this court can-
not be charged with oversight if it refused to make independent
investigation to find it out. Nevertheless, from a reading of the
instructions it is apparent that if any one of them had been
given, and the jury had obeyed it, as it would have been bound
to do, the verdict must have been for the plaintiff; for each one
of them amounted to a direction to the jury to find for the
plaintiff. In the original opinion we pointed out the fact that
the evidence was conflicting as to what the agreement between
the parties was. Under this condition it was the province of the
jury to find the facts, and there was no error in the court's ac-
tion in refusing to direct a verdict.

The greater portion of the argument in support of the petition
is devoted to a review of the evidence in an effort to show that it
is insufficient to sustain the verdict, and that this court was in
error in its conclusion on this point. We do not find upon
further consideration any reason to reach a different conclu-
sion. The other points made were all made in the brief sub-
mitted at the hearing, and were given full consideration. We

find nothing in the petition to lead us to think that a rehearing would lead to a different result.   The petition is denied.

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE SMITH: I agree that the motion for a rehearing should be overruled.

