CUERTH ET AL., RESPONDENTS, *v.* ARBOGAST, APPELLANT.

(No. 3,295.)

(Submitted October 22, 1913. Decided November 7, 1913.)

[136 Pac. 383.]

*Claim and Delivery—Evidence—Admissibility—Cross-examination—Instructions—Livestock — Marks and Brands—Verdict—Insufficiency.*

Claim and Delivery—Cross-examination—Scope.

1.   Where plaintiff in an action in claim and delivery had testified that he had permitted fifty head of cattle (the subject of the action), valued at $1,400, to be taken many miles away by a stranger upon a deposit of $300, under an agreement amounting to a bailment with an option to purchase, a question asked him on cross-examination whether he had made any investigation as to the person's standing or character was improperly excluded.

[As to when and against whom replevin is maintainable, see note in 88 Am. St. Rep. 741. On the necessity and sufficiency of allegation as to the ownership or right to possession in the complaint in replevin, see note in Ann. Cas. 1912A, 333.]

Same.

2.   Refusal to permit the wife of plaintiff to be cross-examined as to the details of the negotiations had between him and the person who took possession of the cattle under the circumstances referred to in paragraph 1 above, after she had testified to the transaction and that it did not amount to a sale, was error.

Same—Cross-examination—Scope—Statutes.

3.   Section 8021, Revised Codes, prescribing in general terms the scope of cross-examination, must be liberally construed, and the rule extended rather than restricted.

Same—Argumentative Denial—Reply.

4.   The answer of defendant in claim and delivery setting forth affirmatively the reasons why title to the cattle in controversy was in him and not in plaintiff, was an argumentative denial; hence, failure to reply did not constitute an admission of the truth of the matters stated so as to justify the exclusion of evidence offered in support thereof.

Same—Evidence—Admissibility.

5.   It was error to exclude the checks given by defendant in payment of the cattle sought to be recovered in an action in claim and delivery, and which he claimed to have bought in good faith from a third person while in the latter's possession.

Same.

6.   Evidence consisting of a note given by the apparent owner of the cattle and a chattel mortgage to secure the debt evidenced by it, which latter remained of record uncanceled for more than a month at the time defendant claimed to have bought the livestock, was competent for the purpose of re-enforcing the presumptions relative to the possession and ownership of property (Rev. Codes, subds. 8, 11, 12, sec. 7962).

Same—Instructions—Agreement to Purchase—To be in Writing.

7.   Plaintiff's claim having been that the transaction between him and the person to whom he delivered the cattle in controversy amounted

to a bailment with an option to purchase, although the contract had not been reduced to writing, the court should, in view of section 5092, Revised Codes, which provides that unless a contract of sale of personal property where title is stipulated to remain in the vendor until final payment is in writing, and filed for record, *etc.*, the transaction is void as to a purchaser prior to filing, have defined. an agreement to sell and told the jury to find for defendant if the transaction was such an agreement, and he bought the cattle while in the ostensible owner's possession.

[As to what constitutes a conditional sale, see note in 94 Am. St. Rep. 234. As to the rights of the parties to a conditional sale when the property is destroyed, see notes in Ann. Cas. 1913C, 661; Ann. Cas. 1913D, 338.] .   .

Same—Livestock—Brands—Evidence of What.

8. *Held*, that while a recorded brand or a certificate thereof is *prima facie* evidence of its ownership, it is not *prima facie* evidence of ownership of the animal bearing it, it is a circumstance to be considered with others as tending to show, but in itself insufficient to prove, ownership.

Same—Brands—Purpose of Statute.

9. The purpose of the Mark and Brand Act (Rev. Codes, sec. 1790 *et seq.*) is to secure to the person who records his brand the exclusive use of the design adopted; and the object sought in requiring a brand to be vented is to foreclose the vendor's claim on the animal sold.

Same—Instructions—Abstract Rules of Law—Refusal not Error.

10. Refusal to submit abstract rules of law, such as the presumptions prescribed by subdivisions 8, 11 and 12 of section 7962, relative to the possession and ownership of property, to the jury in the form of instructions is not error.

Same—Verdict—When Insufficient.

11. A verdict in claim and delivery which does not respond to all the material issues tried is insufficient to sustain a judgment.

*Appeal from District Court, Chouteau County; Jno. W. Tattan, Judge.*

ACTION by Henry Cuerth and wife against John Arbogast. From a judgment for plaintiffs and an order denying a new trial defendant appeals. Reversed and remanded.

*Messrs. Stranahan & Stranahan* and *Mr. John Collins,* for Appellant, submitted a brief; *Mr. F. E. Stranahan* argued the cause orally.

There is nothing plainer from the testimony in this case than that the original intention of the parties to the transaction between the plaintiffs and Busch was one of sale and not of bailment. "The very term 'bailment' implies that the owner of an article has placed it in the hands of another, who is at some

time to redeliver it to the owner.  And if the person to whom the thing is delivered has the option to restore it or to pay for it in money or other property, such option is inconsistent with the character of a bailment, and the transaction is in law a sale. *Lyon* v. *Lenon,* 106 Ind. 567, 7 N. E. 311; *Andrews* v. *Richmond,* 34 Hun (N. Y.), 20; *Chase* v. *Washburn,* 1 Ohio St. 244, 59 Am. Dec. 623; *Austin* v. *Seligman,* 21 Blatchf. 506, 18 Fed. 519; *Marsh* v. *Titus,* 3 Hun (N. Y.), 550; and see *Kaut* v. *Kessler,* 114 Pa. 603, 7 Atl. 586.''  (Note to *Bretz* v. *Diehl,* 2 Am. St. Rep. 712; notes to *Slaughter* v. *Green,* 10 Am. Dec. 488; *First Congregational Church* v. *Grand Rapids S. Furniture Co.,* 15 Colo. App. 46, 60 Pac. 948; *Scott Mining etc. Co.* v. *Shultz,* 67 Kan. 605, 73 Pac. 903; note to *Fleet* v. *Hertz,* 94 Am. St. Rep. 209; *Coors* v. *Reagan,* 44 Colo. 126, 96 Pac. 966; 35 Cyc. 29, 655.)  The burden is upon the seller to show that the sale was conditional.  (35 Cyc. 653.)  There is no indication whatever in the record that the plaintiffs desired or intended or had any occasion to let their cattle out to an agister, or that Busch had any desire or intention to take the cattle for the purpose of running them.

The district court erred in refusing to instruct the jury that a brand is no evidence of the ownership of the animal bearing it.  This court has held that the mere transfer of the brand and a record of the transfer will not, *ipso facto,* take the place of actual possession of the animal as required by the statute concerning fraudulent sales.  (*Ettien* v. *Drum,* 32 Mont. 311, 80 Pac. 369.)  Much as we dislike to see the historic cowman's idols shattered in this way, we must of necessity ask the court to smash another, by holding that the failure to vent a brand will not take the place of the filing of a written conditional sale contract, as the law positively enjoins.  The reasoning in *Stewart* v. *Hunter,* 16 Or. 62, 8 Am. St. Rep. 267, 16 Pac. 876, applies in this state.  A person is not obliged to record his brand. Our general recorder is directed to make the record for him only who "wishes to record his brand," and the recorder "must designate the particular brand" so as to see to it that no two

persons get the same brand. A person may use any brand he chooses, recorded or unrecorded, but he must not infringe on another's recorded brand. (Rev. Codes, sec. 8864.) This question arose in a case in Kentucky, wherein the court held that the brand on an animal does not *per se* prove title, and the court there gave many illustrations to show how wholly wrong one may be in assuming that the owner of the brand is the owner of the animal that bears it. (See *Plummer* v. *Newdigate,* 2 Duv. (Ky.) 1, 87 Am. Dec. 479.) Concerning the venting of a brand on an animal, the supreme court of California says: ''The intention clearly is to prevent the vendor from subsequently claiming the cattle, because they carry his mark and brand.'' (*Walden* v. *Murdock,* 23 Cal. 540, 83 Am. Dec. 135.) So that the venting of the brand is for the protection of the buyer and not for the purpose of putting a club and a shield in the hands of the seller, where he fails, as is often the case, to perform his duty under the statute, to vent the brand on the animal sold by him.

*Mr. W. G. Towner,* for Respondents, submitted a brief and argued the cause orally.

''A bailment with the right on the part of the bailee to buy is to be distinguished from a sale, the transaction not becoming a sale until the option is exercised.'' (35 Cyc. 33.) ''Where by the contract a person receives a chattel which he is to keep for a certain period, and if in that time he pays for it a stipulated price, he is to become the owner, but if he does not pay for it, he is to pay for its use, such person receives it as bailee, and the right of property is not changed until the price is paid.'' (Mechem on Sales, sec. 32; *Enlow* v. *Klein,* 79 Pa. 488.) Knowledge of any fact sufficient to put a purchaser on inquiry as to the existence of some right or title conflicting with that he is about to purchase is fatal to his claim to be considered a *bona fide* purchaser. (*Reynolds* v. *Fitzpatrick,* 40 Mont. 593, 107 Pac. 902.)

''While possession is *prima facie* evidence of ownership of personal property, yet he who deals with such possession upon the mere evidence which possession affords takes upon himself

the risk that there is another and true owner." (*Moore* v. *Robinson,* 62 Ala. 537; *Hamlin* v. *Sears,* 82 N. Y. 327.)  "A person having no title can convey none, even to a *bona fide* purchaser." (35 Cyc. 356.)    The cattle in question were converted by Busch and sold to appellant and the latter cannot acquire title thereto. (*Howe* v. *Johnson,* 117 Cal. 37, 48 Pac. 978; *Smith Premier Typewriter Co.* v. *Stidger,* 18 Colo. App. 261, 71 Pac. 400; *New Liverpool Salt Co.* v. *Western Salt Co.,* 151 Cal. 479, 91 Pac. 152.) The presumption of ownership from possession from its very nature may be easily rebutted, and it affords no protection to one who purchases property or otherwise obtains it from one who is not the real owner.  (Jones on Evidence, sec. 74.)  "Whether a transaction is a bailment or other contract is a question for the jury" (*Brown* v. *Gilliam,* 53 Mo. App. 376; *Reissner* v. *Oxley,* 80 Ind. 580; *Porter* v. *Duncan,* 23 Pa. Sup. Ct. 58; *Crosby* v. *Delaware etc. Canal Co.,* 119 N. Y. 334, 23 N. E. 736; *James* v. *Plank,* 48 Ohio St. 255, 26 N. E. 1107.)  "In an action by the bailor against a third person to recover property—where bailee's power to sell is at issue—it is for the jury to determine whether bailee had the power, notwithstanding the fact of sale is undisputed." (*Citroen* v. *Adam,* 53 Hun, 629, 5 N. Y. Supp. 669.)

Section 1791, Revised Codes, means that the certificate of a recorded brand is *prima facie* evidence of ownership of an animal bearing such brand.    See *State* v. *Cardelli,* 19 Nev. 319, 10 Pac. 433, where the court said: "The object of branding and marking cattle  *  *  *  is for the purpose of identification; that their ownership may be known and distinguished from other stock; that it may be known to whom the particular cattle belong. That stock may be identified in this manner, unless prohibited by a positive statute, is beyond dispute."  Subsequent to the decision in this case, Nevada passed a law making a recorded brand or mark *prima facie* evidence of ownership.   (See, also, *Gale* v. *Sales,* 11 N. M. 211, 66 Pac. 520.)

Several states have adopted statutes making the recording of the brand *prima facie* evidence of ownership.  (*Debord* v. *Johnson,* 11 Colo. App. 402, 53 Pac. 255; *Dickson* v. *Territory,* 6

Ariz. 199, 56 Pac. 971; *Brown* v. *Moss,* 53 Or. 518, 18 Ann. Cas. 451, 101 Pac. 207; *State* v. *Dunn,* 13 Idaho, 9, 88 Pac. 235; *Territory* v. *Smith,* 12 N. M. 229, 78 Pac. 42.) If our statute does not mean as contended for by respondent, then it simply relates to the mark or brand itself, and the common-law rule applicable to brands applies and would still be *prima facie* evidence of ownership of the animal. "A brand is, on common-law principles, evidence of ownership." (*Rex* v. *Forsythe,* 4 N. W. Ter. 398.) This case was cited in *State* v. *Wolfley,* 75 Kan. 406, 12 Ann. Cas. 412, 11 L. R. A. (n. s.) 87, 89 Pac. 1046, 93 Pac. 337, wherein the trial court had refused an instruction that a brand was simply to be considered by the jury for establishing identity of animals and should not be considered as proving or tending to prove ownership. The supreme court held that in the absence of a statute forbidding or regulating the use of recorded brands as evidence of ownership, they may be so used. The effect of plaintiff's recorded brand as evidence was for the jury, and the *prima facie* case made by the record might be overcome by any competent evidence or proof. (*Brown* v. *Moss,* 53 Or. 518, 18 Ann. Cas. 541, 101 Pac. 207.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Action in claim and delivery to recover certain cattle or their value. Defendant appealed from an adverse judgment, and from an order denying him a new trial. The plaintiffs claim that they owned the cattle in dispute, and let them to one John D. Busch under an agreement which amounted to a bailment, with an option to Busch to purchase. The defendant alleges that he purchased the cattle from Busch while he was in possession of them, and for their fair value, without notice of any outstanding claim.

1. Plaintiff Henry Cuerth testified that Busch came to him a stranger, and that, upon the security of $300 left with him, he permitted Busch to take fifty head of cattle, valued at $1,400, forty [1] or fifty miles away under an agreement to keep them for

three months, and to purchase them if Busch had the money to make payment. Upon cross-examination he was asked if he made any investigation as to Busch's standing or character. This was excluded as not proper cross-examination, and incompetent and immaterial. The witness had given his version of his transaction with Busch. Whether it amounted to an absolute sale, a conditional sale, an agreement to sell, or a mere bailment with an option to purchase, depended upon the truth of Cuerth's statements. It was a vital question, and any evidence, otherwise proper, which would reflect upon the probability of the story should have been received. The jury might have concluded properly that, if Cuerth did not make any inquiry into Busch's liability, it was because he then treated the transaction as a sale. In any event, the inquiry was proper, and the ruling erroneous.

2. Mrs. Cuerth, who claims to be interested in these cattle, testified on her direct examination to the negotiations between her **[2, 3]** husband and Busch, and that a sale to Busch was not made. On cross-examination the details of the transaction were sought; but practically every effort on the part of counsel for defendant to ascertain the facts was met by an objection that it was not cross-examination, and these objections were sustained. In fact, the rulings amounted practically to a denial of the right to cross-examine the witness. While it is the general rule that cross-examination must be confined to the material matters brought out on direct examination or connected therewith (sec. 8021, Rev. Codes; *Pelican* v. *Mutual Life Ins. Co.*, 44 Mont. 277, 119 Pac. 778; *Borden* v. *Lynch*, 34 Mont. 503, 87 Pac. 609), and that mere excursions into matters foreign to the subject considered on direct examination will not be permitted, still the section above is to be liberally construed, and the general rule extended, rather than restricted. (*Cobban* v. *Hecklen*, 27 Mont. 245, 70 Pac. 805; *Hefferlin* v. *Karlman*, 30 Mont. 348, 76 Pac. 757; *Knuckey* v. *Butte Electric R. Co.*, 45 Mont. 106, 122 Pac. 280.) The declaration of this court upon the subject was tersely made in *Kipp* v. *Silverman*, 25 Mont. 296, 64 Pac. 884, as follows: "Section 3376, Code of Civil Procedure [8021, Rev. Codes] permits a wide range

for cross-examination, and the courts should incline to extend, rather than to restrict, the right. Properly understood, the right extends, not only to all facts stated by the witness in his original examination, but to all other facts connected with them whether directly or indirectly, which tend to enlighten the jury upon the question in controversy.'' In *State* v. *Biggs,* 45 Mont. 400, 123 Pac. 410, this was repeated, and in addition thereto we said: ''The rule necessarily includes questions, the purpose of which is to bring out facts illustrative of the motives, bias and interest of the witness, or as reflecting upon his capacity and memory. The right would be of little value if inquiry into these matters were not permitted.''

3. Defendant offered in evidence the checks which he had given for these cattle when he purchased them from Busch; but upon objection they were excluded, and erroneously so. In an attempted defense of the rulings, counsel for plaintiffs [4, 5] contends that, by failing to reply to the affirmative matter set forth in the answer, the purchase from and the payment to Busch were admitted; but with this we do not agree. The so-called affirmative matter amounted only to an argumentative denial of plaintiffs' title, and everything which could be proved under it could likewise be proved under a general denial. (*Kaufman* v. *Cooper,* 38 Mont. 6, 98 Pac. 504, 1135; *Hickey* v. *Breen,* 40 Mont. 368, 20 Ann. Cas. 429, 106 Pac. 881.) Defendant was entitled to show that he purchased the animals from Busch, and to offer the best evidence he had of that fact.

4. The trial court erred also in excluding defendant's offer in evidence of the note given by Busch to Fruchtbar, and a [6] chattel mortgage upon these same cattle to secure the debt evidenced by that note. The mortgage was duly filed for record in Chouteau county, the home of these plaintiffs, on June 23, within two weeks at most from the day upon which they had given the cattle into Busch's possession, and remained of record uncanceled on July 30, when the defendant alleges that he purchased the cattle from Busch, who was then in possession of them. The evidence was competent for the purpose of re-en-

forcing the presumptions which the Codes declare: "8. That a thing delivered by one to another belonged to the latter. * * * 11. That things which a person possesses are owned by him. 12. That a person is the owner of property from exercising acts of ownership over it, or from common reputation of his ownership." (Rev. Codes, sec. 7962.)

5. At the time these transactions between plaintiffs and Busch and between Busch and the defendant occurred, section 5092, Revised Codes, was in force, as. follows: "All contracts, notes and instruments for the transfer or sale of personal property where the title is stipulated to remain in the vendor [7] until the payment of the purchase price, or some part thereof, shall be in writing, and the original or a true copy thereof certified by the county clerk and recorder shall be filed with the county clerk and recorder of the county wherein the property is situate, otherwise any such contract, note or instrument is void as to a purchaser or mortgagee of such property prior to such filing." The trial court should have defined an agreement to sell and should have instructed the jury that, if they found that the transaction between plaintiffs and Busch amounted to such an agreement, and further found that defendant purchased the property from Busch while in his possession, then their verdict should be for the defendant, for it is uncontroverted in the evidence that there was not any contract reduced to writing, or any contract filed as required by section 5092 above.

6. The trial court instructed the jury "that a brand duly recorded with the recorder of marks and brands of this state is [8] *prima facie* evidence of the ownership of an animal bearing such brand; in other words, that the owner of a duly recorded mark or brand is *prima facie* the owner of an animal bearing such brand." Counsel for respondents contends that the instruction is justified by the rules of the common law, as well as by sections 1791 and 1793, Revised Codes, and cites *Queen* v. *Forsythe,* 2 N. W. Ter. 398, 4 Territories L. R. 398, wherein it was held, by a divided court, that proof that an animal bore John Lawrence's mark and brand, that it was a steer three years old,

and that Lawrence had not sold or otherwise disposed of locally any steers, was sufficient proof of ownership to sustain a conviction for larceny. Nothing whatever is said by the court of any rule of the common law, and no authority whatever is cited for the holding; but much emphasis is laid upon the fact that identification of cattle by brands is a common custom in that territory. Upon a somewhat similar state of facts the like conclusion was reached by the supreme court of Oklahoma, in *Hurst* v. *Territory,* 16 Okl. 600, 86 Pac. 280, and in *State* v. *Cardelli,* 19 Nev. 319, 10 Pac. 433; but in neither of these last two cases is there any mention made of a rule of the common law, and in neither is it asserted that a brand, or the record of a brand, is *prima facie* evidence of the ownership of the animal which bears the brand. We are satisfied that authority for the trial court's action based upon a rule of the common law cannot be found, and that such rule was never enforced except by virtue of some statute which promulgated the rule.

In *State* v. *Keeland,* 39 Mont. 506, 104 Pac. 513, and again in *State* v. *Trosper,* 41 Mont. 442, 109 Pac. 858, this court treated the brand upon an animal as evidence tending to identify the animal, and to show ownership in the one who owned the brand; while in *State* v. *De Wolfe,* 29 Mont. 415, 74 Pac. 1084, we said: "The fact that the O L brand belonged to Houk, and that the horses bore such brand, was not proof that they belonged to Houk at the time they were driven away, or that defendant was not rightfully in possession of them." In other words, we have said that the brand upon an animal is a circumstance to be considered with others as tending to show ownership, but in itself insufficient to prove ownership. (*Territory* v. *Harrington* (N. M.), 121 Pac. 613.)

It is doubtless true that in the early days, when the livestock industry was of commanding importance in this western country, common custom decreed that ownership of range animals should be determined by the brand, and that controversies over livestock should be settled by tribunals created by the owners of the herds; but, just as the *jueces del campo* gave way to legally con-

stituted tribunals, so the rules and customs of the plains were superseded by positive legislative enactments. In probably every western state mark and brand laws have been enacted, and provision made for records. In many instances the statute declares in language unmistakable in its meaning that a recorded brand or the certificate from the recorder shall be *prima facie* evidence that the person who owns the brand owns the animal which bears the brand (N. M. Comp. Laws 1897, sec. 67; Colo. Gen Stats. 1883, sec. 3174; Idaho Rev. Stats., sec. 1179; Nev. Gen. Stats. 1885, sec. 761; Cal. Pol. Code, sec. 3172; Or. Laws 1893, p. 52; Ordinances N. W. Ter. [Can.] 1900, p. 42); but this is not true in all the western states. In Utah the statute merely provides that the recorder's certificate "shall be deemed evidence in law." (Utah Comp. Stats. 1897, sec. 39.) In 1887 the Arizona statute made the brand upon an animal *prima facie* evidence that the animal belonged to the owner of the brand (Ariz. Rev. Stats. 1887, sec. 2788); but this was repealed, so far as the rule was applicable to civil cases, in the compilation of the laws with reference to livestock, approved March 1, 1897, which declares that the certificate of the recorded brand "shall be competent evidence of the registration of such brand, and *prima facie* evidence of ownership." (Ariz. Laws 1897, p. 25, sec. 50.) In *Brill* v. *Christy,* 7 Ariz. 217, 63 Pac. 757, there was involved the ownership of certain cattle. A certificate of the record of the brand was offered in evidence for the purpose of showing *prima facie* title in defendant, whose brand the cattle bore. The court, after quoting section 50 of the Act of 1897 above, said: "If the ownership of the brand or the fact of its registration was in controversy, the provision quoted would be applicable. * * * Neither is the registration of the brand an issue in the case. Section 50 applies solely to the requirement for and the manner of the registration of brands, the proper evidence of such registration, and the ownership of the brands thus registered, and does not deal with the cattle that may be in such brands, the mode of their transfer, or the evidence of their ownership. * * * While, therefore, section 50 of the said

Act constitutes the certificate of the registration of a brand competent evidence of such registration, and *prima facie* evidence of the ownership of such brand, it does not make such certificate either competent or *prima facie* evidence for any other purpose.

The history of our own statute furnishes some insight into the legislative intention in passing it. By an Act approved January 10, 1872, provision was made for recording marks and brands, and for certificates to be delivered to the owners. Section 4 provided that such "certificates shall be deemed evidence in law." The same Act required that upon a sale of branded livestock the brand should be vented, and section 8 declared: "The venting of said original brand shall be *prima facie* evidence of sale or transfer of said animal or animals." These provisions were carried into the compilations of 1871–72, 1879, and 1887, without change, and were the law up to the adoption of the Codes in 1895. As the Political Code was reported, and as it first passed the House of Representatives, it contained, in lieu of the two sections above, first, a provision that a certified copy of the record of the brand shall be *"prima facie* evidence of the ownership of the brand," and, second, that "the venting or counterbranding is *prima facie* evidence of sale." In the Senate these provisions were stricken out, and in lieu thereof the language as found in the Codes to-day was substituted. These amendments were concurred in, and the Act thus amended became the law which went into effect July 1, 1895, and provided that the general recorder of marks and brands must "furnish to the owners of recorded brands a certified copy of the record of the same, which certificates are *prima facie* evidence of the ownership of the brand or mark so recorded" (Pol. Code 1895, sec. 2941), and "every person who sells * * * cattle, must vent or counterbrand such animals, * * * and the venting of said original brand shall be *prima facie* evidence of sale or transfer of said animal or animals so vented." (Pol. Code 1895, sec. 2943.) These provisions were carried into the Revised Codes of 1907, and are found in sections 1791 and 1793, respectively. It will thus be seen that, through

all the changes which have occurred in our livestock statute since 1872 the legislature, while asserting repeatedly that a vented brand is *prima facie* evidence of a sale of the animal bearing the brand, has studiously declined to say that the brand on an animal or a certificate of a recorded brand shall be *prima facie* evidence of ownership of the animal bearing the brand. On the contrary, while there may have been room for doubt as to the meaning of the original statute, which declared that the recorded certificate "shall be deemed evidence in law," the legislature which enacted the Codes declined to approve the somewhat equivocal terms employed by the Code commissioners, but cleared away all uncertainty by declaring, in language whose meaning cannot be questioned, that the certificate of a recorded brand "is *prima facie* evidence of the ownership of the mark or brand so recorded." Other state legislative bodies have had no difficulty in making a recorded brand, or a certificate of such brand, *prima facie* evidence of ownership of the animal bearing the brand, and doubtless our assemblies could have done equally as well if they had chosen to do so; but their refusal to adopt a statute similar to those in force in sister states where conditions are similar, and their final adoption of the statute in its present form, furnish most persuasive evidence that it has been the policy of this state to go no further than to recognize a brand as evidence, just as a flesh mark or other distinguishing mark or characteristic is [9] evidence. The purpose of the statute is to secure to anyone who records his brand the exclusive use of the design adopted (*Stewart* v. *Hunter,* 16 Or. 62, 8 Am. St. Rep. 267, 16 Pac. 876), and the object sought in requiring a brand to be vented is to foreclose the vendor's claim to the animal sold (*Walden* v. *Murdock,* 23 Cal. 540, 83 Am. Dec. 135). The instruction given is erroneous. It provides a rule of evidence not warranted by statute or the common law.

7. Counsel for appellant requested the trial court to include in an instruction the provisions of subdivisions 8, 11, and 12 of [10] section 7962 above; but the request was denied. It is not commendable practice to submit to jurors abstract rules of

law, even though they are correct, and error cannot be predicated upon the action of the court in refusing defendant's request in this instance. (*First Nat. Bank of Portland* v. *Carroll*, 35 Mont. 302, 88 Pac. 1012.) If a concrete application of the rules to the facts of this case had been made, it would have been reversible error to refuse to submit the instruction.

Since this cause must be remanded for a new trial, the attention of counsel is directed to the fact that the verdict returned upon the trial of this case does not respond to all the material [11] issues tried, and is insufficient to sustain a judgment. (*Hickey* v. *Breen,* above.)

The judgment and order are reversed. and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.