### HOELLER, RESPONDENT *v.* MOOG ET AL., APPELLANTS.

(No. 4,370.)

(Submitted April 20, 1921. Decided May 16, 1921.)

[198 Pac. 367.]

*Chattel Mortgages—Conditional Sale Contracts—Recordation— Assignment—Record on Appeal.*

Record on Appeal—Defects—Duty of Counsel.
1. It is incumbent upon counsel to so prepare the record on appeal as to present the full merits of their contentions and thus enable the court to review them with intelligence without having to indulge in speculations, and to this end avoid endless repetition in pleadings, clerical inaccuracies and errors in the evidence, or the incorporation of testimony referring to exhibits not in the record, and of exhibits referred to in neither pleadings nor proof.

Chattel Mortgages—Conditional Sale Contracts—Recordation—Assignment —Rights of Assignee of *Bona Fide* Mortgagee.
2. Where a chattel mortgage, executed by the purchaser of the property under a conditional sale contract, was filed for record prior to the recordation of the contract, it was as valid in the hands of the

[60 Mont. 74.]

assignee of the mortgage as it was in those of the *bona fide* mortgagee for value and without notice, even though the assignee may have had actual notice of the existence of the conditional contract of sale at the time of the assignment.

Same—Conditional Sales—Right of Purchaser to Mortgage Property.

3. The purchaser of personal property under a conditional sale contract whereby title was reserved in the seller until full payment made had a mortgageable interest in it (section 5757, Rev. Codes, as amended, Laws 1913, Chap. 86).

*Appeals from District Court, Hill County; W. B. Rhoades, Judge.*

Action by Anna Hoeller against John A. Moog and others. From a judgment for plaintiff, and from an order denying their motion for new trial, defendants appeal. Reversed.

*Mr. H. S. Kline* and *Mr. C. B. Elwell,* for Appellants, submitted a brief; *Mr. C. B. Elwell* argued the cause orally.

The original mortgagee, the Chester State Bank, being a *bona fide* holder of the mortgage without notice, any subsequent holder of such mortgage claiming through it, whether with or without notice, was in the same position as the Chester State Bank, and his title was just as good and free from attack as the title of the Chester State Bank. In other words, once the instrument in question passes into the hands of a *bona fide* holder without notice, it makes no difference how many prior or subsequent holders have had notice, the mortgage or other instrument has been purged of all taint, and the holder is entitled to rely upon the incontestability of the right of any prior holder through whom he traces his title. It is not easy to find numerous cases to support this as applied to conditional sales agreement, but we find other cases supporting the same theory as applied to the filing of chattel mortgages, and the rights of innocent third parties acquiring rights to the chattels, where the mortgage is unrecorded. We do not think that there can be any question but that the purposes of filing a conditional sale agreement and a chattel mortgage are the same. In both cases the possession is in one party, and an interest remaining in the

other, and it is for the purpose of protecting innocent third parties who might deal with the party in possession that the recording or filing is made necessary. (*McKnight* v. *Gordon,* 32 Rich. Eq. (S. C.) 222, 94 Am. Dec. 164; *Tyler* v. *Safford,* 31 Kan. 608, 3 Pac. 333; *Hawkins* v. *Western National Bank of Hereford* (Tex. Civ.), 146 S. W. 1191; *John Caplice Co.* v. *Beauchamp,* 22 Mont. 258, 56 Pac. 278; *National Cash Register Co.* v. *Maloney,* 95 Iowa, 573, 64 N. W. 618; *Herring* v. *Cannon,* 21 S. C. 212, 53 Am. Rep. 661.)

It would be possible to quote almost indefinitely from this line of decisions, all to the same effect, some where the original purchaser was *bona fide* and subsequent purchaser had notice, and others where the original purchaser or mortgagee had notice and the subsequent purchaser had no notice. In the first case the holder is entitled to protection by reason of the good title of the party through whom he must trace his title, and in the second instance he is entitled to protection by reason of his own *bona fides.*

*Mr. Frank N. Utter,* for Respondent, submitted a brief and argued the cause orally.

In 35 Cyc. 682, it is stated concerning the protection afforded by a recording statute for conditional contracts of sale, "but even the statute will not protect subsequent purchasers or creditors with actual notice." In *Jones* v. *Clark,* 20 Colo. 353, 38 Pac. 371, the court quoted from Judge Bradley in *Harkness* v. *Russell,* 118 U. S. 663, 30 L. Ed. 285, 7 Sup. Ct. Rep. 51 [see, also, Rose's U. S. Notes] : "It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent in this case the operation of the general rule, which we consider to be established by overwhelming authority, namely, that in the absence of fraud, an agreement for a conditional sale is good and valid, as well against third persons as against the parties to the transaction."

The same court in a case decided in April, 1916, *Money-weight Scale Co.* v. *Hale-Halsell Groc. Co.*, 57 Okl. 135, 156 Pac. 1187, under a recording law passed in 1910, rendering a contract of conditional sale void, as against creditors and others, if not filed, said: "It is the opinion of this court that, although the conditional sale contract was not recorded at the time of the attachment, yet if defendant, prior to the levy of the attachment, had actual notice that the title to the scale was retained by the vendor until the purchase price was paid in full, failure to record cannot be taken advantage of by them, they having 'had actual knowledge of such contract." (See, also, *National Bank of Larned* v. *Tufts*, 53 Kan. 710, 37 Pac. 127; *Crumrine* v. *Reynolds*, 13 Wyo. 111, 78 Pac. 402; *Morton* v. *Frick Co.*, 87 Ga. 230, 13 S. E. 463; *Hill* v. *Luden & Bates Southern Music House*, 113 Ga. 320, 38 S. E. 752; *Thompson* v. *Duff*, 19 Ill. App. 75; *Allen* v. *McCalla*, 25 Iowa, 464, 96 Am. Dec. 56.)

It should be noted that there is a clear distinction in this state between the title of the owner of property in his possession subject to an unrecorded chattel mortgage, and the holder of property as vendee under an uncompleted conditional sale contract. In the one case the holder has an absolute title subject to be taken away by foreclosure. In the other, the holder has no title whatever that he can convey, except equitable interests, and the recording laws in such cases are not for the purpose of conveying title but merely to protect those, who in reliance upon the presumption of ownership from such possession deal with him in ignorance of the true title.

The case of *John Caplice Co.* v. *Beauchamp*, 22 Mont. 258, 56 Pac. 278, is against appellants' contention. In speaking of the rights of a subsequent purchaser as opposed to an unrecorded chattel mortgage, the court says: "Indeed, before the new Codes of 1895 went into effect, he would have been protected, even if he had had the knowledge that Neson had mortgaged the property, because the mortgage had not been filed

as required by law.  (*Milburn Mfg. Co.* v. *Johnson,* 9 Mont. 537, 24 Pac. 17.)   That rule would not obtain now, though, for under Civil Code of 1895, section 3861, good faith is essential on the part of a subsequent purchaser and encumbrancer of personal property mortgaged who assails the validity of a prior mortgage as against his rights."  The foregoing holding is directly against the citations made by appellants of decisions from other states concerning the rights of subsequent purchaser as opposed to unrecorded chattel mortgages.

MR. COMMISSIONER SPENCER prepared the opinion for the court.

This is an action to enjoin the sale of a hotel building at Inverness, Hill county, Montana, under mortgage foreclosure. Defendants have appealed from an adverse judgment and order denying their motion for a new trial.

As a reversal must be had herein, it is worthy of note that [1]   the pleadings upon which this action was predicated are replete with a useless and almost endless line of repetitions; that the printed transcript contains many clerical errors and inaccuracies in the evidence, and presents evidence so vague and incomplete as to preclude a satisfactory conclusion by this court.   Testimony was received as to exhibits which do not appear in the record, such as Plaintiff's Exhibit "H," while other exhibits appear which were referred to neither in the pleadings nor proof, such as Defendants' Exhibit 4.   We find the record encumbered by Plaintiff's Exhibit "D," a mortgage from Gesche to Foorman in 1912, Exhibit "E," power of attorney, Foorman to Baatz, and Exhibit "F," promissory note, Gesche to Foorman, to secure which Exhibit "D" was executed, all of which, so far as the evidence discloses, are wholly immaterial, and neither tend to prove nor disprove any of the issues material upon the trial, while Plaintiff's Exhibit "I" appears to be incompetent for any purpose.   We think we may, with propriety, call attention of counsel to their duty

to clients and the court, to present the full merits of their contentions and preserve the record so that this court, if called upon, may review them with intelligence, and not be required to delve into the realms of speculation.

The record before us is wholly unsatisfactory, but we believe [2] the pleadings and proof disclose the following facts to be incontestable: That upon December 20, 1913, Amanda L. Gesche was the owner of a two-story, frame hotel building situated in the town site of Inverness, Hill county, Montana; that upon the same date she sold said hotel building to Amelia Wyant upon what is commonly called a conditional sales contract, reserving in herself, however, title to said hotel building until finally paid for, according to the terms of said contract; that upon December 27, 1913, Amelia Wyant and her husband, A. L. Wyant, mortgaged said hotel building to the Chester State Bank of Chester, Montana, to secure the loan of a sum of money, represented by a note of even date with said mortgage; that upon January 8, 1914, the mortgage was filed for record in the office of the clerk and recorder of Hill county; that upon April 12, 1914, Amanda L. Gesche sold and assigned to this plaintiff, Anna Hoeller, all of her right, title and interest in and to the conditional contract of sale before mentioned; that upon April 15, 1914, the conditional contract of sale was filed for record in the office of the clerk and recorder of Hill county; that upon April 25, 1914, the assignment of said contract was likewise filed for record, and that subsequently, on April 30, 1914, the chattel mortgage to the Chester State Bank was assigned to the defendants, Moog, Carver and Barringer, and that they are now the owners and holders of the same. All parties to this action have treated the building in controversy as personal property, and the record is silent as to who owns the realty upon which it stands.

Appellants assign five specifications of error, but in disposing of the questions involved in these appeals, we think it only necessary to consider assignment No. 4, which is as follows:

"Error in holding that at the time Amelia Wyant and A. L. Wyant gave their mortgage to the Chester State Bank they had no interest in the Hotel Inverness which they could mortgage, and that the Hotel Inverness never became subject to that mortgage."

The question primarily material herein is: What right, if any, did the Chester State Bank acquire by virtue of its mortgage from Amelia Wyant and husband under date of December 27, 1913?

Chapter 86, Laws of the Thirteenth Session, page 378, reenacts section 5757, Revised Codes, and provides: "Any interest in personal property which is capable of being transferred may be mortgaged"—so that, if the Chester State Bank was a *bona fide* mortgagee prior to the filing for record of the conditional contract of sale from Amanda L. Gesche to Amelia Wyant, its rights became fixed under the provisions of section 5092, Revised Codes, as amended by Chapter 52, Session Laws of 1911, as follows: "All contracts, notes and instruments for the transfer or sale of personal property, where the title is stipulated to remain in the vendor until the payment of the purchase price or some part thereof, shall be in writing, and the original or true copy thereof, certified by the county clerk and recorder, shall be filed with the county clerk and recorder of the county wherein the property is situated; otherwise, any such contract, note or instrument is void as to *bona fide* purchasers, mortgagees, or attaching creditors of such property prior to such filing." (*Cuerth* v. *Arbogast,* 48 Mont. 209, 136 Pac. 383.) And likewise its assignees, the defendants herein, occupied the same position as the Chester State Bank, and were entitled to the same rights and immunities which said bank acquired, which seems to preclude any argument as to the rights of the Chester State Bank, if in fact it is a *bona fide* mortgagee for value and without notice.

The testimony of J. O. Berglin, cashier of the Chester State Bank, is the only evidence in the record pertaining to

[60 Mont. 74.]

the *bona fides* of the said bank mortgagee, and in so far as his evidence is of any probative value, it does tend to show that the Chester State Bank is a holder of the mortgage in good faith for value and without notice. If the Chester State Bank was a mortgagee in good faith, and its mortgage was filed prior to the filing of the conditional contract of sale, it then had a vested right and ownership (Rev. Codes, sec. 5092, as amended, *supra*), of which it could not be divested except by voluntary act on its part, or by operation of law through the statute of limitations, and hence it could sell or assign its rights to third persons who would occupy the same position and succeed to the same rights as the bank itself.

The complaint charges that the mortgage to the Chester State Bank was taken in the name of said bank as mortgagee, but for the use and benefit of these defendants. The evidence does not support this allegation. The court made no finding as to the rights acquired by the Chester State Bank under its mortgage, but it did find that between December 20, 1913, and December 27, 1913, the date of the mortgage, the defendants had actual notice of the existence of the conditional contract of sale between Amanda L. Gesche and Amelia Wyant, and that Amanda L. Gesche was the owner of the hotel building in controversy, and upon this finding based its judgment that the mortgage to the Chester State Bank was of no effect and void as to this plaintiff. We think this was error.

It would be an anomaly in the law to say that the bank had rights as a *bona fide* mortgagee, but that it lost those rights and lost its *bona fides* upon assignment of its mortgage, even though defendants may have possessed actual knowledge of the existence of the conditional contract of sale. Even under the doctrine of implied findings approved in this state (*Crosby* v. *Robbins*, 56 Mont. 179, 182 Pac. 122), to be consistent with its express findings, and to support its judgment, the court must have impliedly found the Chester State Bank had knowledge of the title of the plaintiff in the building in controversy at

the time it accepted its mortgage from Amelia Wyant, but such implied finding would be wholly unwarranted under the [3] proof. Amelia Wyant held a mortgageable interest in the property, but upon the record as a whole we think a retrial should be had, and recommend that the judgment and order denying a new trial be reversed, with directions to grant a new trial.

PER CURIAM: For the reasons given in the foregoing opinion it is ordered that the judgment and order denying a new trial be reversed, with directions to grant a new trial.

*Reversed.*

(Submitted April 20, 1921. Decided May 16, 1921.)